MEIER DENTAL MFG. CO. v. SMITH et al.*

(Circuit Court of Appeals, Eighth Circuit. October 19, 1916.)

No. 4641.

1. CONTRACTS ⊚⟲10(4)—VALIDITY—MUTUALITY.

A contract by which defendant agreed to supply complainants with certain of its manufactured products for sale on commission as ordered during a term of years, and complainants agreed to order a minimum quantity each year under penalty of cancellation of the contract, is not invalid as unilateral.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 37; Dec. Dig. ⊚⟲10(4).]

---

⊚⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 26, 1917.

2. CONTRACTS ☞211—CONSTRUCTION—TIME AS OF THE ESSENCE OF THE CONTRACT.

If the provisions of a contract between merchants, taken in connection with the circumstances of the case and the purposes sought to be accomplished by its execution, disclose that the parties at the time of execution intended to make the time of performance essential, the contract will be so construed, although there is no express provision making time of its essence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 938–943; Dec. Dig. ☞211.]

3. PRINCIPAL AND AGENT ☞33—SALES AGENCY—CONSTRUCTION—TIME AS OF ESSENCE.

Defendant entered into a contract by which it constituted complainants exclusive agents for the sale of certain goods of its manufacture in North and South America and Japan, for a term of eight years. Defendant agreed to supply goods as ordered, and complainants agreed that, if they did not order $10,000 worth of the goods during the first year and in an increasing ratio of 5 per cent. in each succeeding year, defendant might on notice cancel the agreement. *Held* that, in view of the evident purpose of defendant to build up an increasing business, time was of the essence of the contract, and that on the failure of complainants to order the required amount of goods in any year, although it approximated the amount, defendant was within its rights in canceling the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 54; Dec. Dig. ☞33.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by Lee S. Smith and W. Linford Smith, doing business as the Lee S. Smith & Son Company, against the Meier Dental Manufacturing Company. Decree for complainants, and defendant appeals. Reversed.

This was a suit in equity brought by appellees, Lee S. Smith and W. Linford Smith, doing business under the firm name of Lee S. Smith & Son Company, against the Meier Dental Manufacturing Company, the appellant, for an injunction restraining the defendant from enforcing a stipulation of a contract made between the parties on May 7, 1913. The facts disclosed by the pleadings and proof are substantially these:

Defendant, for many years prior to 1913, had been engaged in the manufacture of dental supplies at St. Louis, Mo., and plaintiffs had been jobbers of such supplies, doing business in Pittsburgh, Pa., and had been acting as agents for defendant in selling certain of these supplies; but on May 7, 1913, the parties canceled all prior contracts existing between them, and made a new one to govern their future relations, of which the following are stipulations necessary for consideration in disposing of this case:

(1) Plaintiffs were appointed exclusive agents for a period of eight years for the sale, both at wholesale and retail, in North and South America and Japan, of certain specified articles of dental supplies manufactured by defendant.

(2) Defendant obligated itself to supply plaintiffs with these different articles at prices specified in the contract, as and when plaintiffs might order them or any of them.

(3) Plaintiffs were to get certain commissions on all sales made by them, and were required to sell to customers only at certain specified discounts from wholesale and retail prices.

There was no express provision requiring plaintiffs to order any amount of the articles at any time, or to make any effort to make sales throughout their territory, except what may be found in the provisions of section 26 of the contract, which reads as follows: "The party of the second part [the plaintiffs in

---

this case] covenants and agrees that if it does not, during the first year of this agreement, purchase from the party of the first part [the defendant in this case], and pay for as hereinbefore provided, at least ten thousand dollars ($10,000.00) worth of Usona and Helios brands of regulating appliances, ankrite, iridiumoid, and duplex [these being the dental supplies for the sale of which plaintiffs were given the exclusive agency], net, after all discounts have been taken off, and during each year of the life of this agreement purchase and pay for, as hereinbefore provided, a net amount of said Usona and Helios brands of regulating appliances, ankrite, iridiumoid, and duplex in an increasing ratio of five per cent. (5%) from the first year compounded, then it is agreed and understood that the party of the first part may cancel this agreement, by giving written notice, sent by registered mail, to the party of the second part, which notice shall be given within thirty days (30) after the close of any year from the signing of this agreement."

Plaintiffs failed to purchase during the second year of the contract—that is, within the period of time between May 7, 1914, and May 7, 1915—the minimum amount of $10,500 worth of the articles agreed to be purchased by them, in the amount of $230.83, as admitted by plaintiffs, and in the amount of $1,191.83, as claimed by defendant. Defendant did not, on May 1, 1915, when its president visited plaintiffs at Pittsburgh, notify plaintiffs that they had fallen under the minimum for that year, or advise them of their purpose to exercise their right of cancellation of the contract for that reason. In explanation of this silence, Mr. Meier, the president of defendant company, when on the stand as a witness, in answer to a question propounded by plaintiffs' counsel, asking him why he did not, when in Pittsburgh on May 1st, advise plaintiffs that they had failed to order the required minimum, said: "Because they had not made any effort in the spring of the year, for six months, to sell my products, to help sell them, and advertise them, and there was no reason why I should go there and tell them they were not going to make their minimum." He also testified that the business with plaintiffs had been decreasing and decreasing; that they should have done a business in excess of $15,000 to $20,000 annually. This evidence was not contradicted. It also appears that defendant had been complaining to plaintiffs for several months prior to May, 1915, that they were not showing satisfactory results, and that the business was not "going right."

On May 14 or 15, 1915, defendant's president had a conversation with L. S. Smith, one of the plaintiffs, over the long-distance telephone, and requested him to consent to a modification of the contract respecting discounts, saying that defendant wanted to go out and do business direct with the trade, and that unless these changes were consented to they would cancel the contract. There is no evidence that any changes were consented to by plaintiffs, or that they were willing to make any concessions. Afterwards, on May 14, 1915, the defendant wrote and sent by registered mail to plaintiffs the following letter:

"Gentlemen: Pursuant to the provisions of paragraph 'twenty-sixth' of articles of agreement dated May 7, 1913, between the Lee S. Smith & Son Co. and the Meier Dental Manufacturing Co., inasmuch as you have failed to purchase and pay for a minimum net amount of the Usona and Helios brands of regulating appliances, ankrite, iridiumoid, and duplex during the year ending May 7th, 1915, by order of our board of directors we hereby notify you that under the terms of the provisions of said contract we elect to cancel said contract and said contract is hereby canceled.

"[Signed] The Meier Dental Manufacturing Co.
"A. G. Meier, President."

At about the time of the telephonic conversation, in which defendant's president advised plaintiffs of the defendant's purpose to cancel the contract, plaintiffs sent an order for goods to defendant which would have made up the deficiency for the year. After receipt of the registered letter notifying plaintiffs of the cancellation of the contract, plaintiffs advised defendant that the failure to order the full amount of goods for the second year was due to oversight, and they then tendered to defendant the estimated amount of profit defendant would have made if the full amount had been ordered, and also ordered an amount of goods which would make up the full minimum

for the year, and this tender and offer were refused by defendant, and it refused to honor any further orders for merchandise made by plaintiffs under the contract. As a result, this suit was brought to restrain the defendant from enforcing the cancellation and to compel it to continue filling plaintiffs' orders for goods according to the terms of the contract.

On final hearing, after the foregoing facts had been shown, the court below rendered a decree setting aside the cancellation of the contract and enjoining the defendant company from selling any of its goods in the exclusive territory given to plaintiffs, except by and through the plaintiffs, during the remainder of the eight-year term specified in the contract. From this decree defendant appeals, assigning its rendition as error, and that the court should have dismissed the bill.

Davis Biggs, of St. Louis, Mo. (Bishop & Cobbs, of St. Louis, Mo., on the brief), for appellant.

John F. Green, of St. Louis, Mo. (Frederick N. Judson and J. Porter Henry, both of St. Louis, Mo., on the brief), for appellees.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). [1] Defendant contends, first, that the contract of May 7, 1913, is unilateral, and for that reason unenforceable in law or equity. This contention, in our opinion, is untenable. The covenants of the contract conferring rights and imposing obligations upon the respective parties afforded ample consideration for each other, and clearly validated the contract so far as this contention is concerned.

It is next argued that plaintiffs had an adequate remedy at law, and for this reason the equitable remedy of injunction was not available to them. In the view we take of other questions, we do not consider it necessary to decide this one.

It is next contended that the twenty-sixth paragraph of the contract conferred absolute power upon defendant to cancel the contract in the event plaintiffs failed to order and pay for, during the second year of the duration of the contract, the minimum quantity of merchandise specified by the contract, namely, $10,500 worth, and that, the plaintiffs having failed to order that quantity of goods during that year, defendant, in the exercise of power conferred upon it, canceled the contract, as it had a right to do. In the contract defendant appointed plaintiffs sole and exclusive agents for the sale of its goods in the very extensive territory of North and South America and Japan, and obligated itself to supply them with goods as and when ordered by them at prices definitely fixed in the contract. In consideration of this and other rights and privileges conferred upon them, plaintiffs agreed as follows:

"Twenty-Sixth. The party of the second part [the plaintiffs in this case] covenants and agrees that if it does not, during the first year of this agreement purchase from the party of the first part [the defendant herein] and pay for as hereinbefore provided, at least ten thousand dollars ($10,000.00) worth of Usona and Helios brands of regulating appliances, ankrite, iridiumoid, and duplex [these being the dental supplies for the sale of which plaintiffs were given the exclusive agency], net, after all discounts have been taken off, and during each year of the life of this agreement purchase and pay for as hereinbefore provided, a net amount of" those articles "in an increasing ratio of five per cent. (5%) from the first year compounded, *then it is agreed and understood that the party of the first part may cancel this agreement, by giv-*

*ing written notice, sent by registered mail, to the party of the second part, which notice shall be given within thirty days (30) after the close of any year from the signing of this agreement."*

This language is very plain and explicit, and without doubt in terms gave defendant the right to cancel the contract if plaintiffs should fail during the year ending May 7, 1915, to purchase and pay for at least $10,500 worth of defendant's goods. But it is claimed (1) that paragraph twenty-sixth did not make time of the essence of the contract, and that, if plaintiffs ordered the required amount of goods within approximately the time specified, or (2) ordered approximately the amount of goods required within the specified time, this would constitute substantial performance, enough at least to prevent cancellation of the contract.

Plaintiffs' counsel argue that, because plaintiffs had substantially performed the contract by ordering nearly all the merchandise required of them to be ordered for the second year, the right reserved in the defendant to cancel the contact for nonperformance should not have been exercised. They also argue that because they inadvertently failed to take notice that the year was about to expire and they had not ordered the required amount, and because defendant's president when conversing with plaintiffs at about the expiration of the year failed to advised them of their pending peril, and because after the year had expired they offered to make good the deficiency either by then ordering the deficient amount of goods or by paying defendant the profits it would have made if the deficiency had not occurred, they are, on high equitable grounds, excused from failure to keep their covenant and released from the agreed consequences of it.

If the only purpose of the contract on defendant's part was to dispose of $10,500 worth of goods in the year in question, there might (which we hardly concede) be some merit in this argument. But it is manifest from a consideration of all the provisions of the contract that defendant's main purpose was not to sell that specific quantity of goods in the time mentioned, but was to build up a substantial and enduring trade for the goods manufactured by it. In order to do so it sought to stimulate plaintiffs' zeal and activity in its behalf by giving them the sole and exclusive right to sell its goods throughout a large territory for a long period of time, and gave them attractive terms whereby their income was made dependent upon their success in disposing of its goods. The only covenant defendant required of plaintiffs to insure it of their diligence was that they should agree to dispose of at least $10,000 worth of goods in the first year, with an annual increase of 5 per cent. in each succeeding year, reserving to itself as its only effective means of self-protection against plaintiffs' possible disloyalty or inefficiency, the right to cancel the contract if plaintiffs should fail to perform this covenant.

[2] But plaintiffs, through their counsel, now say they did not mean what they said and agreed to in the twenty-sixth paragraph of the contract, but did mean that if they should not purchase approximately the amount specifically agreed to be purchased within the year, in other words, if they should not substantially perform this one stipulation as required by defendant for its protection, in that event only, the

right of cancellation might be exercised by defendant. While the argument of counsel extended into some minor considerations, it was mainly confined to the one question: Whether the time within which the required amount of goods should be disposed of annually was of the essence of the contract, and this presents the main and controlling question for our present consideration.

It is true the parties did not, in express terms or in so many words, say that time should be of the essence of the contract; but such an explicit statement as that was not necessary to make it so. If the provisions of the contract, taken in connection with the circumstances of the case and the purposes sought to be accomplished by its execution, disclose that the parties at the time of execution intended to make the time of performance essential, that intention should not be thwarted, and the time so fixed should be regarded as essential, without any express stipulation to that effect; and this, we think, is especially true in contracts of merchants and manufacturers, where special preparations to perform are often necessary, and time within which deliveries are needed are peculiarly insistent. In the case of Telegraphone Corporation v. Telegraphone Co., 103 Me. 444, 454, 69 Atl. 767, 771, the Supreme Court of Maine, in treating of this general subject, said:

" * * * If it satisfactorily appears from the terms of the stipulation and all the circumstances that the parties actually intended to make the time specified an essential element of the contract, and that the consequences, of a failure of performance must have been contemplated by the parties at the time of the execution of it, such an express stipulation as to time will be held decisive of the question in a court of equity as well as a court of law."

In the case of Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, the Supreme Court of the United States, speaking by Mr. Justice Gray, said:

"In the contracts of merchants, time is of the essence. * * * A statement descriptive of the subject-matter, or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty; * * * that is to say, a condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract."

And in the case of Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920, the Supreme Court adopted the language just quoted from the Norrington Case, and approved its doctrine. See, also, to the same effect, Jones v. United States, 96 U. S. 24, 24 L. Ed. 644.

[3] We think it very clear that the parties to this case intended, when they executed the contract in question, to make the time within which it should be performed an essential element of the contract. They said in clear and unambiguous language that the plaintiffs should take $10,500 worth of defendant's goods during the second running year of the contract. Persons are presumed, and ought to be held, to mean what they say. As indicating that they regarded this stipulation as creating a serious and binding obligation on the part of the plaintiffs, they not only expressly so agreed, but agreed in no less clear and unambiguous language that, if they failed to take that amount of goods within the second year, the defendant might cancel

the contract, and thus deprive them of all its valuable rights and privileges. This last stipulation discloses that plaintiffs understood well the consequences of their failure to perform as agreed. As all men are presumed to intend the necessary consequences of their act, we must conclude that plaintiffs, by consenting to the drastic remedy of cancellation of their contract for failure to keep its stipulation as to time of performance, were keenly alive to the importance attached to the time of delivery, and must have known that it was regarded as essential by the defendant, and they conceded it to be so at the time. Moreover, the purposes of the defendant company, as already pointed out, and all the circumstances attending the execution of the contract, converge to the conclusion that time of performance was regarded by both parties as important and essential. We therefore cannot escape from the necessity of holding that time was of the essence of the contract between plaintiffs and defendant.

Plaintiffs' counsel have also argued that defendant acted arbitrarily and oppressively in canceling it (1) without notifying plaintiffs of its purpose to do so; (2) without giving plaintiffs an opportunity to perform after the expiration of the time for performance; (3) without accepting plaintiffs' offer to compensate defendant in money for the profits it would have made if there had been full performance; and they have also argued that because plaintiffs unintentionally overlooked the requirement of the contract in question, and failed to keep themselves advised as to the quantity of goods ordered, and were, therefore, as the end of the second year drew near, ignorant of the fact that they had not complied with the requirement of the contract for the second year, the defendant should be deprived of its only effective remedy of cancellation. All such considerations as these are, in our opinion, foreclosed by the holding that time of performance, as fixed in the contract, was of the essence of the contract. But, if they were not foreclosed by that holding, we should not be inclined to regard them with much favor. They are considerations which plaintiffs might have presented to the defendant as excuses for nonperformance, with a hope that they might secure favorable concessions from it and thus avoid cancellation.

They might also have been of some importance, if defendant was seeking affirmative aid of a court of equity, in the determination of a question, which might possibly then have been raised, whether it approached its portals with clean hands; but as plaintiffs are alone invoking equitable relief, and defendant's legal right to do what plaintiffs complain of is established, we refrain from any discussion of the evidence tending to justify defendant's conduct in these respects, and also from any discussion of the merits of these considerations, which we regard, so far as their bearing on this case is concerned, as purely ethical and immaterial.

On the whole, we are unanimously of the opinion that the court erred in setting aside the cancellation and ordering the defendant to proceed with the contract as if no cancellation had been made.

The judgment is reversed, and the cause remanded to the District Court, with instructions to enter a decree dismissing plaintiffs' bill.