## Huber, et al. v. Johnson.

(Decided March 20, 1917.)

### Appeal from Oldham Circuit Court.

1. **Specific Performance—Contracts Relating to Real Property.—** In a suit by a vendor to enforce specific performance of a contract for the sale of land, the relief will be granted if plaintiff

shows title only by adverse possession by himself, and those through whom he claims, for the statutory period of fifteen years or more, as such possession perfects and renders the title as complete as if derived from the Commonwealth.

2. Judicial Sales—Title of Purchaser.—Neither the failure to prove the allegations of a pleading against a defendant before the court by warning order only, as required by section 126 of the Civil Code, nor the failure to execute the bond as required by section 410 of same code, will render the judgment for sale of land void, nor prevent the purchaser thereof from obtaining a complete title, or all that the owner or owners possessed.

3. Judicial Sales—Married Women—Parties.—In a suit to sell land under the provisions of section 490 of the Civil Code the judgment may be rendered and the land sold free from the inchoate rights of married women, without they being privily examined; provided they are parties to the suit, either as plaintiffs or defendants as is provided by sub-section 2 of section 499 of the Civil Code.

4. Judicial Sales—Collateral Attack.—In a collateral attack it will be presumed that such privy examination, if required, was made, and that evidence was heard against a non-resident constructively served and that the bond required by section 410 of Civil Code was given; unless the record affirmatively shows to the contrary.

5. Specific Performance—Contracts Relating to Real Property.—In a suit for specific performance of a contract for the sale of real estate, it is proper to make adverse claimants to the land parties and to litigate their claims therein, and should their claims be denied and the title otherwise perfect, the execution of the contract will be ordered.

BENJAMIN H. SACHS, M. A., D. A., and J. G. SACHS and D. H. FRENCH, attorneys for appellant Leonard Huber.

BLAKEY, QUIN & LEWIS, attorneys for appellants Keidel & Hess.

EDWARDS, OGDEN & PEAK and J. BALLARD CLARK for appellees.

Opinion of the Court by Judge Thomas—Affirming.

This suit was brought by appellee (plaintiff below) against appellant, Leonard Huber (defendant below) seeking to specifically enforce a written contract for the sale of 20½ acres of real estate which the plaintiff sold to the defendant, Huber, on January 19, 1914, the price agreed to be paid being $6,000.00 cash. The contract, which was signed by the plaintiff and accepted in writing by the defendant, is in these words:

"Prospect, Ky., January 19, 1914. I hereby agree to sell my property located near Prospect, Kentucky,

containing 20½ acres more or less for the sum of six thousand ($6,000.00) dollars cash. I guarantee said property to be free from all encumbrances, and deed will be executed as soon as title can be examined."

The defendant failed to comply with the contract, and on the 29th day of April, 1914, the plaintiff and his wife duly executed and acknowledged a deed to the defendant and tendered it to him, which he declined to accept. In the deed the land attempted to be conveyed is described in two parcels, one described as containing 18 acres more or less and the other 47/100 of an acre. The reasons which defendant assigned for his refusal to perform the contract, as manifested by his answer and the various amendments thereto, are: (1) That the description of the land in the written contract of sale, and upon which the suit is based, is too indefinite and is insufficient to bind him under the statute of fraud requiring the sale of real estate to be in writing; and, (2) that plaintiff's title tendered to him by the deed referred to is not a marketable one, is defective, and one which the law will not compel him to accept.

These contentions were resisted by the plaintiff in his reply and amendments thereto, and after preparation and submission of the cause the court rendered judgment granting the plaintiff the relief sought and rendered judgment against the defendant for the amount of the purchase price, to reverse which he prosecutes this appeal.

As to the first objection it may be said that the general rule with reference to the sufficiency of the description of land in a contract is that if the contract for the sale of land contains such a description or reference thereto as that it may be easily identified by parol evidence, it is sufficient. 36 Cyc. 632; Early v. Douglas, 110 Ky. 813; Gaines v. Jones, 86 Ky. 527; Posey v. Kimsey, 146 Ky. 205; Bates v. Harris, 144 Ky. 399; Campbell v. Preece, 133 Ky. 572.

In the Bates case the description of the land was "Her (vendor) Muddy Creek farm." There was no designation of the county or state wherein the Muddy Creek farm was situated, nor was there any reference in the contract to any town designating the locality in which it was situated. Yet, under the rule alluded to, the court held the description to be sufficient to bind the parties thereto.

In the Campbell case the writing evidencing the sale was:

"Received of Joseph Preece $265.00 as part payment on the land sold him by myself on the Shanty Branch." It was there held that there was a sufficient designation of the land, and the court said:

"Parol evidence is always receivable to identify the land spoken of in the writing. . . . . If the writing identifies the land, that, of course, ends the inquiry. If it does not identify it, but affords means of identification, that is deemed sufficient."

It was determined that the writing involved in that case was sufficient to afford the means of identification so as to bind the parties to the contract.

In the Posey case the description in the written contract was: "My farm known as the John Baskett home farm," and the description of the land which the vendees proposed to exchange with the vendor was described as "Their Anna Yeaman farm of 500 acres." This court held each of the descriptions sufficient, and said:

"Under the authority of the cases cited, it is clear that the description of the land was sufficient."

There are still later cases from this court holding to the same rule, but it is one so firmly fixed in the jurisprudence of this state that we deem it unnecessary to encumber this opinion with further citations.

The description of the land in the instant case is much easier to identify by the terms employed in the contract than it was in any of the cases to which we have referred. The land is described as being located near Prospect, Kentucky, which is not only a town easily susceptible of location by proof, but its location is a matter within the judicial knowledge of the court, the location of the town of Prospect being one of geography, of which the court will take judicial notice. We, therefore, conclude that the trial court correctly held that the first objection was not available as a defense to the action.

Considering the second objection urged by defendant as a ground for declining to comply with the contract, the record discloses that the tract of land intended to be sold by the writing sued on, while adjoining and now all in one body, was formerly in two separate tracts, one consisting of 20 1/10 acres, and known in this record as the F. M. Chamberland tract, and the

other a fractional part of an acre, being 68/100 of an acre and known as the Toll Gate lot. They were both acquired by the plaintiff under a purchase made by him at a judicial sale under a judgment of the Oldham circuit court rendered at its October, 1910, term, in the case of E. C. Hoagland, Admr. of F. M. Chamberland, Deceased, &c. v. W. H. Chamberland, &c., his deed having been executed to him by the master commissioner of the Oldham circuit court on February 27, 1911.

It is now insisted by defendant that Chamberland did not have title to the toll-gate lot, and that the proceedings in the suit of Hoagland, Admr. v. Chamberland, &c., were so irregular as to render the judgment under which the land was sold void, and that the title plaintiff acquired under the sale made by the master commissioner in pursuance of the judgment rendered in that case is a defective and unmarketable one, for which reason he should not be compelled to accept the title which plaintiff tendered to him. There is no question made but that F. M. Chamberland, before his death, which occurred in 1909, had a perfect title to the 20 1/10 acres, but it is claimed that he held no legal or perfect title to the toll-gate lot.

The facts with reference to the title which F. M. Chamberland held to that lot, as shown by the proof, are that in 1882, or within a few years immediately prior to that time, the Goshen & Sligo Turnpike Company, a corporation, owned and operated the Goshen and Sligo turnpike, immediately adjacent to which is the toll-gate lot, and at the time referred to it obtained a deed to that lot from the then owner of a 25-acre tract of land, and out of the northeast corner of it and upon which it erected a house as a residence for its toll-gate keeper, and that the turnpike company occupied the toll-gate lot until some time in 1903, when it sold its turnpike to Oldham county, reserving, however, the toll-gate lot which it sold to F. M. Chamberland. Neither the deed which the turnpike company obtained for the toll-gate lot, nor the one which it executed to Chamberland conveying to him that lot, was recorded in the county court clerk's office for Oldham county, nor was either of the originals introduced upon the trial, the evidence tending to show that they were both lost, misplaced or destroyed.

At this point it is insisted by defendant that because the proof did not positively show that the last two deeds mentioned were lost or destroyed that it was incompetent to introduce oral proof as to their contents or to even prove the fact of their execution, and reliance for this position is founded upon the case of Helton v. Asher, 103 Ky. 730.

Without stopping to analyze the evidence upon this point, and conceding for the purpose of the case that the evidence was insufficient to show either the execution or destruction of these deeds, and acknowledging the correctness of the rule as laid down in the case referred to, the facts disclosed by the record are still sufficient to uphold the judgment of the trial court as to the sufficiency of plaintiff's title to the toll-gate lot. By an amendment it is shown that plaintiff and his vendors not only acquired title in the manner just considered, but that they acquired title to the toll-gate lot by adverse possession, having occupied it and claimed it adversely, notoriously, against the defendant and the whole world, for a continuous period of more than fifteen years. In addition, there was filed with an amended petition a quit-claim deed to that lot executed to plaintiff by the president of the turnpike company. The right of the turnpike company to execute the quit claim deed long after it had ceased to do business is seriously questioned by counsel for defendant, but we do not deem it necessary to burden this opinion with a consideration of that question, because we are convinced that the pleaded title of adverse possession is thoroughly established by the testimony. It is shown that after the purchase of the toll-gate lot by the turnpike company, it, as we have said, immediately took charge of that lot, erected a dwelling thereon, perhaps some outhouses, and occupied it with its tenants continuously up to the time it sold its turnpike to Oldham county, a period of twenty-one or more years. It is true that for perhaps some of the time just before it sold that lot to Chamberland the proof shows that the house was not occupied for some short occasions, but the title of the turnpike company by adverse possession had already ripened into a perfect one before that and when it sold the lot to Chamberland its title was perfect. The latter occupied the lot from the time he purchased it until his death, and it continued to be occupied by his

widow until her death, which occurred something like a year after that of her husband. It is a well settled rule that a title acquired by adverse possession is as perfect as one acquired from the Commonwealth, and we have no hesitancy in concluding that so far as the toll-gate lot is concerned the title of Chamberland thereto is unassailable, and if the proceeding under which plaintiff obtained title is regular, his deed to the toll-gate lot conveys a perfect title to it.

This brings us to a consideration of the objections to the proceeding instituted by the administrator of Chamberland against his heirs and creditors for the purpose of settling his estate and dividing the remainder of it amongst his heirs, after the payment of debts. The objections to that proceeding which counsel insists invalidates plaintiff's title obtained by him through the master commissioner's deed are that two of the defendants were non-residents, having been proceeded against by warning orders, and that no proof was taken in that case to prove the allegations of the petition before the judgment ordering its sale was rendered (section 126, Civil Code), nor was there any bond executed or filed in the case as required by section 410 of the Civil Code. The suit referred to of Chamberland's Admr. against his heirs and creditors, as we have said, partakes of the nature of both a settlement suit and one for the sale of land for the purpose of division among the joint owners. Under the ruling of this court in the two cases of Perkins v. McCarley, 97 Ky. 43, and Treddle v. Kohn, 14 Ky. L. Rep. 312, this being in part a suit for the sale of land for division amongst joint owners, the purchaser at decretal sale obtains a perfect title, especially against a collateral attack, although proof may have been required and not taken. In other words the failure to prove the averments of the pleading against one only constructively summoned, in such suits, does not render the judgment void.

It was decided by this court in the case of Oldham v. McElroy, 134 Ky. 454, that the bond required by section 410 of the Civil Code of Practice need not be executed in a suit to settle the estate of a decedent, although it might be necessary in such suit to sell the land which his heirs inherited from him; but that if such bond was required in that character of suit by the section of the code referred to, the failure to execute it would not

render the judgment void, but erroneous only, and the omission would not be cause for attacking the judgment in a collateral proceeding. In the opinion the court said:

"Whether that bond is required before a judgment can be rendered against non-resident heirs decreeing the settlement of their deceased ancestor's estate is not ncessary to be now decided. If it was required, but not executed, the judgment would not be void but erroneous only. Allen v. Brown, 4 Met. 342; Harris v. Adams, 2 Duv. 141; Atchison v. Smith, 3 B. M. 502; Thomas v. Mahone, 9 Bush 111; Tatum v. Gibbs, 19 Ky. Law Rep. 695; Morgan v. Wickliffe, 24 Ky. Law Rep. 1039." See, also, Finney v. Finney, 144 Ky. 114.

It is furthermore insisted as a ground for invalidating the judgment in the Chamberland suit that some of the defendants therein are shown to have been the wives of some of the Chamberland heirs, and the record does not disclose that their consent to the order of sale was obtained before rendering the judgment by privy examination. We have already seen that the questioned judgment is sought to be collaterally attacked by the defendant, in this case, and it might be seriously questioned whether it would not be presumed in that character of attack that the court rendering the judgment took all steps necessary to make it valid. But, waiving that question, subsection 2 of section 495 of the Civil Code of Practice, which became a law March 7, 1902, expressly authorizes the sale of the wife's vested or contingent right of dower in land sold under the provisions of section 490 of the Civil Code without her consent, by privy examination or otherwise, provided she be made a party to the proceeding brought to obtain the sale. The subsection is:

"If a woman have a vested or contingent right to dower in land sought to be sold, under section 490, she shall be made a party to the action brought to sell such land and the court may, with or without her consent, order a sale of the land free from her right; and shall provide for a reasonable compensation to her out of the proceeds of sale or that she shall have the same right in property purchased with the proceeds as she had in the property sold."

The cases from this court cited in a note to section 495 holding to the contrary were rendered before the

enactment of the amendment to that section which we have just quoted, and, therefore, have no bearing on this case.

Almost parallel facts to the ones here are found in the case of Segal v. Reisert, 128 Ky. 117, and it was there held that such privy examination of the wife was not necessary, since the enactment of the amendment referred to in sales of land under section 490 of the Civil Code. It is further shown in that case that if the privy examination were necessary to give the court jurisdiction to order the sale, it would be presumed that it was made in a collateral proceeding seeking to attack the judgment. See, also, Pierce v. Mars, 153 Ky. 749; Harrod v. Harrod, 167 Ky. 309, and Finney v. Finney, 144 Ky. 115.

In the judgment ordering the sale in the Chamberland suit it is stated:

"The parties to this suit, who are married women and entitled to inchoate right of dower are to be compensated reasonably for same out of the proceeds of said sale."

We deem it unnecessary to further elaborate the question presented and discussed, or to make further reference to authorities. The Chamberland suit, as one ground for its maintenance, sought the sale of the decedent's land for purpose of division among his heirs. To this extent it was one brought under section 490 of the code, and under the amendment to section 495 thereof the privy examination of the wives of the heirs insisted upon is not required, as they were each made parties to the Chamberland suit. It is true they are parties-defendant to that suit, and it is insisted that this fact renders the instant case different from that of Segal v. Reisert, 128 Ky. 117, *supra*. But we find no cause, either in reason or logic, for the attempted distinction. In fact the amendment to section 495 of the code, *supra*, recognizes no such distinction. It requires only that the married women shall be made parties to the suit. The right of the court to order the sale of the land free from their contingent dower interest is not made dependent upon the fact that they should be parties-plaintiff only. On the contrary, after they are brought into the case as parties thereto they are before the court and can take such steps as they deem necessary and proper to protect their interest, and the judg-

ment ordering the sale of the land under the circumstances provided for will be valid without a privy examination, whether the wives of the owners are plaintiffs or defendants. It is only required that they should be either the one or the other in order to excuse such examination. We, therefore, conclude that the sale of the land under the judgment in the Chamberland case passed all the title which the deceased owned in and to the land sold, which, as we have hereinbefore seen, was a perfect title, and that the court did not err in its judgment requiring the defendant to comply with the written contract. But if the irregularities which we have discussed in the Chamberland case were sufficient to render the judgment therein erroneous to such an extent as a court of equity would not compel the vendee to accept the title obtained by the purchaser at that sale in a suit for specific performance, there is yet a sufficient reason why the judgment appealed from should be affirmed. There were only two non-residents, one of whom after the warning order caused her appearance to be entered, and the other one received as his distributable share only $23.50. Only two or three of the male heirs were married and they received less than $5.00 each. There is a maxim in law which is *"Lex non curat de minimus,"* which we can imagine no better place for its application than under the facts we have here. For this reason alone, were there not the others, which we have discussed, we would be disinclined to interfere with the judgment appealed from.

The appellants, Keidel and Hess, who were made defendants by an amended petition, are claiming their respective interests in and to the toll-gate lot through the title owned by the owner of the 25 acres of land from whom the turnpike company purchased the lot in question. They claim it through their chain of title to the 25 acres, and are insisting upon the same facts as are urged by the defendant, Huber, in support of their claim. But what we have said applies as well to their claim as to that made by their co-defendant, Huber. They are properly brought into the case, and it was competent for plaintiff to do so in a suit of this character, as in a suit for specific performance all adverse claims to the title held by plaintiff may be adjudicated and the title perfected.

Finding no error in the judgment, it is affirmed