## Schmidt v. Martin.

(Decided June 15, 1923.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Third Division).

1.  Vendor and Purchaser—Vendor Need Not have Good Title at Time He Makes Contract.—It is not essential to the validity of a contract for the sale of land that the vendor have good title at the time he enters into the contract, since it is competent for him to acquire the title afterwards and render himself able to convey a perfect title at the time he is called upon by his contract or by the law to do so.

2. Vendor and Purchaser—Time Not Regarded as of Essence Unless Such Intention is Plainly Manifested—Vendor has Reasonable Time to Perfect Title.—Time is not necessarily of the essence of a contract for the sale of real estate, and will not be so regarded unless it is plainly manifest from the contract or the circumstances of the case that it was the intention of the parties to so specify, and unless that is done the vendor will have a reasonable time after the date fixed in the .contract to perfect and convey a free and unincumbered title to his·purchaser.

3. Compromise and Settlement—Purchaser's Payment to Secure Release from Contract which Vendor Could Not Perform is Without Consideration.—If the vendor, after exercising all the rights to which he was entitled under the law could not convey a perfect title, the purchaser would be released, and there would be no consideration supporting the payment of a sum of money to obtain his release from the contract.

4. Compromise and Settlement—Instruction in Action to Recover Settlement that Vendors had Not Title Held Erroneous.—In an action to recover the amount paid by plaintiff to secure his release from a contract for the purchase of land, an instruction that at the time the payment was made the vendors had no title to the land was immaterial and erroneous, where the payment was made several days before the time fixed for closing the contract, time was not made of the essence of the contract, and the vendors stated that they would acquire good title in the meantime, or would return the amount already paid by the purchaser, if they were unable to do so.      ᵇ

5. Compromise and Settlement—Threat of Suit to Enforce Contract to Purchase Land Held Not Duress Invalidating Settlement.—Evidence that vendors threatened a purchaser with a lawsuit if he would not accept the tendered title and perform his contract at the time specified, but at the same time stated that he need not do so unless they were able to .convey him a perfect title, does not show legal fraud or duress.

6. Compromise and Settlement—Evidence Held to Warrant Submission of Issue of Plaintiff's Mental Incapacity When He Made Settlement.—In an action to recover the consideration paid for release of plaintiff from a contract to purchase land, evidence that plaintiff became unduly and unnecessarily excited and worked up over the transaction, with testimony by a physician he was beside himself to such an extent as to be incapable of transacting ordinary business, held sufficient to warrant the submission of the issue of incapacity to the jury, though the large preponderance of the testimony was to the contrary, so that a verdict finding incapacity might be flagrantly against the evidence.

7. Compromise and Settlement—Recovery of Amount Paid for Settlement Restores Rights Under Contract.—Where the amount paid by a purchaser to secure his release from a contract for the purchase of land is recovered by him on the ground of incapacity or fraud or duress at the time of the settlement, the vendors should

be restored to their right to have the contract for sales specifically enforced.

8. Cancellation of Instruments—Judgment—Right Under Contract can be Enforced in Action to Set Aside Settlement or in Subsequent Action.—In an action to set aside a settlement and recover the amount paid to secure plaintiff's release from the contract for the sale of land, the defendant may by appropriate pleadings enforce his right to have the contract performed in that action; but, if he did not see proper to do so, he would not be barred from doing so in a subsequent independent action if brought within the time permitted by the law.

O'NEAL & O'NEAL, OTTO G. EVERBACH and HENRY J. TILFORD for appellants.

BURWELL K. MARSHALL for appellee.

OINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants and defendants below, Charles F. and Adolph Schmidt, were the qualified executors of the will of their father, Ferdinand Schmidt, who died August 18, 1919, a resident of Jefferson county, and his will was probated in the county court of that county on November 4 the same year. The testator was the owner of a farm near the old town of Jefferstown containing 142 1/3 acres. He made small specific bequests to a surviving daughter and to the two surviving adult children of a deceased daughter and devised the farm to his surviving wife for life with the remainder to the defendants, his two sons, whom he appointed executors of his will. Following the clause nominating his two sons as executors of his will, and after devising the land to his widow for life, the will says: "My executors shall have full power and authority to sell any and all of my real estate at any time after my death, and their deed as my executors shall pass an absolute fee simple title to the purchaser, and the purchaser shall not be required to look to the application of the purchase money."

Defendants concluded to sell the farm and procured the services of a real estate agency for that purpose and it advertised the sale at public auction to the highest and best bidder for Tuesday, July 6, 1920, and appellee and plaintiff below, William H. Martin, became the purchaser at the price of $188.00 per acre: A written contract was immediately and on the same day drawn and executed by the parties, and it was signed and witnessed by the auctioneer, and in it the terms of payment were set forth

and it was stipulated, in substance, that the contract was to be executed and possession given to plaintiff on October 1, 1920, and he immediately made the required deposit of $2,000.00 with the bank at which he did business. Defendants then advertised and in due time held a public sale of all the personal property of the testator and otherwise commenced preparations to convey and deliver to plaintiff the possession of the farm on the date agreed upon. Before that, however, and on September 17, 1920, testator's two grandsons prosecuted an appeal from the judgment of the county court probating the will, which was followed by some uneasiness as well as worry on the part of plaintiff because, as he contends, of the prospects of his having to accept and pay for an imperfect title.

Some two or more meetings of Charles Schmidt and plaintiff finally culminated in the latter paying defendants on September 27, 1920, the sum of $4,250.00 to be released from the contract. He afterwards filed this action in the Jefferson circuit court to recover from defendants that amount upon the grounds that (1), was paid without consideration; (2), he was induced to make it by means of threats and fraudulent conduct of defendants amounting to a species of duress, and (3), that at the time he entered into the compromise and paid the sum sought to be recovered he was mentally incapacitated to contract, and the compromise was therefore not binding on him. The answer was a complete denial of all the alleged grounds of recovery, and upon trial the court submitted the issues in instruction number 1, which said: "The court instructs the jury as a matter of law that on the 27th day of September, 1920, when the compromise concerning which you have heard evidence was entered into between the plaintiff and the defendants, that the defendants did not have and could not have conveyed the fee simple of the land which was bid in by the plaintiff on the sixth day of July, 1920; and if you shall believe from the evidence that on or prior to said date of Sept. 27, 1920, the defendants Adolph Schmidt and Charles Schmidt, or either of them, stated or represented to the plaintiff that they had good and sufficient fee simple title to the said farm and could not accept the deed and pay the money that they would institute proceedings against him and compel him to do so, thereby tying up his funds, and that the plaintiff, relying on said statements and being deceived thereby, paid said $4,250.00 in reliance on

the same; or if you shall believe from the evidence that on and prior to the 27th day of September, 1920, the plaintiff by reason of the anxiety arising out of the questions involved in said sale, was so wrought upon that at the time of said settlement on September 27, 1920, he was mentally incompetent to be able to understand his rights or the rights of the defendants in the premises, if you believe such was the case, from the evidence, then in either of such states of case the law is for the plaintiff and you should find for him; but unless you shall so believe from the evidence the law is for the defendants and you should find for them." Under it there was a verdict for plaintiff for the full amount of his claim, which the court declined to set aside on a motion made for that purpose, and to reverse the judgment rendered thereon defendants prosecute this appeal.

The alleged error in giving to the jury the copied instruction constitutes the chief one upon which reliance is had for a reversal of the judgment, and at the outset we must admit our inability to agree with the learned judge, who presided at the trial, upon the law arising from the facts disclosed in this record. While it may be accepted as true that on September 27, 1920, the day upon which the compromise was effected, defendants could not convey a perfect title, yet that fact, if true, was not determinative of the rights of the parties, since under the terms of the written contract for the conveyance of the land it was not to be performed till October 1, 1920, and defendants had at least up to and including that day, if not a reasonable time thereafter, to perfect and convey an unencumbered fee simple title to plaintiff.

It is not essential that the vendor of land be able at the time he enters into the contract for its sale to convey a perfect title in order to make the contract valid, since it is competent for him to acquire the title afterwards and render himself able to convey a perfect title at the time he is called upon by his contract, or by the law, to do so. He may have no sort of color of title at the time he entered into the contract, yet if he afterwards acquires it and is able to comply with the terms of his contract *when* he is legally bound to do so, the contract is a perfectly valid one and may be specifically enforced at the instigation of the vendor. The doctrine, as so announced, is as broadly stated by all writers upon equity jurisprudence, and this court has frequently recognized and applied it. Some of the cases in which it was done

are: Smith v. Cansler, 83 Ky. 367; Gaither v. O'Doherty, 11 Ky. L. R. 594, 12 S. W. 306, and Tapp v. Nock, 89 Ky. 414. The cited cases also hold that time is not necessarily of the essence of a contract for the sale of real estate and will not be so regarded unless it is plainly manifest from the contract or the circumstances of the case that it was the intention of the parties to so specify, and unless that is done the vendor will have a reasonable time after the date fixed in the contract to perfect and convey a free and unencumbered title to his vendee; and in the cases of Huber v. Johnson, 174 Ky. 697, and National Finance Corporation v. Robinson, 193 Ky. 649, it was held by this court that it was even competent for the vendor to perfect his title *in the action* for specific performance by bringing before the court the adverse claimants thereto and having their claims determined in that suit and if adjudged against the claimants specific performance would be decreed. Of course, if the vendor after exercising all the rights to which he was entitled under the law could not convey a perfect title, the vendee would be released and, *a fortiori*, there would be no consideration supporting the payment of any sum to obtain his release. But, we have no such case as that here; on the contrary, the record discloses that the contestants of the will were *sui juris*, and defendants had at least until October 1, 1920, in which to either compromise the contest of the will of their father or to induce the contestants to join in the deed for the sale of the farm and to then litigate the rights of the parties in and to the proceeds. Indeed, it is testified to by plaintiff himself that defendants all the while assured him that when the time arrived they would be able to convey him a perfect title, but if they were then unable to do so he would be released from his contract of purchase and the $2,000.00 deposit would be turned back to him. Such assurance did not seem to satisfy him, but just why we are unable to discover from this record, unless it was that plaintiff was willing to pay the compromise amount rather than be compelled to take the land at the agreed price. He was confronted with the two alternatives, (a), to accept the deed when the time arrived for its execution and pay for the land if a perfect title was conveyed, or (b), be entirely released from his contract and have his deposit restored to him if no such title could be made. The latter consequence would leave defendants the owners of

whatever interest in the land they had and restore the
parties to the *status quo*, which is all that a purchased
release from the contract by plaintiff could possibly ef-
fect. But such release could not be obtained by plaintiff
without a compromise settlement if at the appointed
time defendants were able to convey a perfect title, in
which event it would be his duty to accept the deed and
pay for the land according to the terms of the contract,
and to become relieved from the latter consequence was
undoubtedly a sufficient consideration for the payment
of the sum sought to be recovered the payment of which
canceled his compulsory duty to accept and pay for a
conveyance in the event defendants were able to perfect
the title. By the compromise plaintiff disarmed defend-
ants and neutralized their efforts to perfect the title in
any manner whatever and thus completely destroyed all
their interest in the contract and removed all incentives
on their part for a hasty settlement of the contest pro-
ceedings. We feel quite sure, therefore, that the court
was in error in stating to the jury that defendants could
not as a matter of law convey a perfect title on Septem-
ber 27, 1920, the day of the execution of the compromise
settlement, since that fact, if true, was wholly immaterial.

Neither do we think the record furnishes any substan-
tial evidence of fraud, threats or duress on the part of
the defendants whereby plaintiff was induced or driven
into making the compromise. It is true he testified
that he was threatened with a lawsuit if he would
not accept the tendered title and perform his contract,
but at the same time and in the same conversation he
testified that defendants told him that he need not do so
unless they were prepared to and did convey him a per-
fect title, which they insisted they would be able to do at
the proper time. We fail to see wherein such conduct
could in any manner be classed as legal fraud or duress,
and unless there is more evidence on another trial upon
that issue than what is furnished by the present record
it should not be submitted to the jury.

There is some evidence that plaintiff became unduly
and unnecessarily excited and worked up over the fact
of the appeal from the judgment probating the will by
testator's grandsons, and a physician testified that about
that time he was beside himself to such an extent that in
the opinion of the witness he was incapable of contract-
ing or transacting ordinary business; yet the large pre-
ponderance of the testimony is to the contrary and shows

only that as the time approached for the performance of the contract by the execution of the deed plaintiff became nervous and was perhaps excited more than the facts justified and that his brooding over the matter caused him more mental worry than a less excitable person would have endured, and it is extremely doubtful if a finding that plaintiff was mentally incapacitated to contract at the time he made the compromise could be sustained on the objection that it was flagrantly against the evidence, yet we are not prepared to say that the evidence was such that it was error to submit that issue to the jury, as was done in the latter part of instruction 1, copied above, and under the record as presented in this court that was the only issue which the court should have submitted to the jury.

It is further insisted by defendants that if plaintiff should succeed in recovering from them the amount paid in the compromise settlement then they ought to be restored to their rights under the contract, i e., the right to have it specifically enforced according to its terms, in which contention they are undoubtedly correct. But no such relief was demanded by any pleading in this case but which we are inclined to believe could have been done and the entire rights of the parties settled in the one litigation. In discussing the title, ''Compromise and Settlement,'' the writer of the text in 12 Corpus Juris 359, says: ''The effect of setting aside the compromise is to place the parties in the original position; and all rights which are transferred, released, or created by the agreement are revested, restored, or discharged by the avoidance.'' And in the case of City of Middlesboro v. Coal & Iron Bank, 33 Ky. L. R. 961, and numerous others from this court, it was held that a recovery on the cause of action which was compromised should be credited by the amount paid in compromise and settlement, which ruling is but an indirect recognition of the doctrine of the test quoted from Corpus Juris, and which principle itself is but an embodiment of sound reasoning and undoubted justice. If, however, defendants should not see proper to litigate that question in this action, they would not be barred from doing so in a subsequent independent one if brought within the time permitted by the law.

For the reasons indicated the judgment is reversed with directions to set it aside and grant the new trial and for proceedings consistent with this opinion.