## Rogers Bros. Coal Company v. Day, et al.

(Decided November 4, 1927.)

(Rehearing Denied, with Modification, January 27, 1928.)

### Appeal from Pike Circuit Court.

1.   Contracts.—At law, time is of essence of contract, but generally it is not so regarded in equity.

2. In equity, question whether time is of essence of contract is viewed from standpoint of intention of parties as gathered from contract involved, and, unless intention to make time essence is clearly expressed or necessarily implied, it will not be so regarded.

3. Vendor and Purchaser.—Agreement that survey of land purchased was to be made by purchaser within the year 1917, and, if not, purchaser was to take and pay for land at stipulated acreage of 800 acres, held express stipulation that time given for making survey should be regarded as essence of contract.

4. Vendor and Purchaser.—Where contract dated August 29, 1917, for sale of land of unknown acreage provided that, if purchaser elected to make survey, survey should be made within year 1917, purchaser was not excused from performance of its agreement to make survey during that year by act of God, alleged to be excessive cold weather preventing making of survey.

5. Vendor and Purchaser.—Where contract dated August 29, 1917, for sale of land of unknown acreage provided that, if purchaser elected to make survey, survey should be made within year 1917 or acreage was to be accepted at stipulated figure of 800 acres, evidence that purchaser did not commence survey until October 17, 1917, and employed only one surveyor held not to show its good-faith effort, so as to excuse it from non-performance because of subsequent cold weather preventing survey.

6. Specific Performance.—Equity will decline to decree specific performance, if it would work hardship or injustice on defendant or operate oppressively.

7. Specific Performance.—Rule that harsh and oppressive consequences will defeat award of equitable relief of specific performance is inapplicable, except where such consequences were not within contemplation of parties at time of making contract sought to be enforced.

8. Vendor and Purchaser.—Where consequences of taking unknown acreage of land at agreed acreage of 800 acres and paying for it at stipulated price was within contemplation of parties at time contract was made, purchaser could not complain, in vendor's suit for balance of purchase money on basis of 800 acres at agreed price, that consequences of its contract were not within reasonable contemplation of parties, so as to entitle defendant to invoke rule that specific performance will not be decreed, where it will work hardship or injustice.

NEWTON BELCHER and ROSCOE VANOVER for appellant.

MOORE & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On August 29, 1917, Effie P. Day and her husband, P. W. Day, jointly owned a one-fifth undivided interest in and to a large tract of land in Pike county, which is refer-

red to in this record as the "Long Branch" tract. Adjoining it in the same county was another large tract referred to in this record as the "Victoria Williamson" tract, and both of which appear to have been formerly owned by one Benjamin F. Williamson. On the day referred to the appellees (to whom we shall hereafter refer as plaintiffs) and the appellant (to whom we shall hereafter refer as defendant), Rogers Bros. Coal Company, entered into a written contract by which plaintiffs agreed to sell and convey to defendant their undivided one-fifth interest in the Long Branch tract, and in which defendant agreed to pay plaintiffs therefor the sum of $50 per acre. At that time the precise acreage of the entire tract, and consequently the acreage of plaintiffs' aliquot part thereof, were unknown, and in view of that fact the contract said:

"Said parties of second part are hereby granted the privilege of taking the above-described interest for 800 acres, or to survey the said tract at the expense of second party at the election of second party; i. e., second parties may elect which plan they shall pay upon, price per acre to be $50. . . . It is mutually agreed that, if the second party elects to make survey, the said survey shall be made within the year 1917. The balance of the purchase money shall bear interest from the 3d day of September, 1917; it is further agreed that if survey is not made within the present year the acreage shall be taken at 800 acres and note executed for the balance due thereon as herein stipulated."

Defendant also agreed in the contract to pay plaintiffs at that time the sum of $20,000, which it did, and further agreed to pay the balance within 4 years thereafter, with interest from September 3, 1917, for which it was to execute its note. On January 2, 1918, plaintiffs demanded the execution of the note pursuant to the terms of the written contract, but defendant objected upon the ground that it had not surveyed the land. Plaintiffs thereupon called its attention to the contract whereby it only had the privilege of ascertaining the true acreage by survey during the year 1917, and insisted, that, defendant not having exercised it, the land should be taken and settled for at the agreed acreage of 800 acres, but which defendant at that time refused to do. In the meantime, and on November 28, 1917, at the request of defendant, plaintiffs

executed and delivered to it their deed conveying their one-fifth interest, and at that time a collateral contract was executed whereby plaintiffs agreed not to retain a lien in the deed on the land for the balance of the purchase money, and defendant agreed therein to execute a note therefor, indorsed by Fon, Lon, and J. L. Rogers, and all of which was to be done "as per agreement heretofore given."

Nothing was done after January 2, 1918, until September 2 of that year, when defendant wrote plaintiffs a letter, in which it inclosed its check for $802.95, in payment of what it claimed was the first year's interest on the deferred payment, and which was calculated upon an acreage that it said was ascertained from a completed survey made in 1918, whereby the amount of land sold was found to be 667.65 acres, which at the price of $50 per acre would aggregate the total sum of $33,382.50, leaving a balance of purchase money due thereon of $13,382.50, and upon which the tendered interest check was calculated. On the next day (September 3, 1918) plaintiffs wrote defendant a letter in which it refused to accept the check and returned it therein. In that letter it was insisted by plaintiffs that the interest due was $1,200, and specific attention was again called therein to the terms of the contract, supra, in which it was specified and agreed that the survey if made by defendant should be done in the year 1917, and, if not, then the land should be accepted and paid for upon the agreed acreage of 800 acres. No reply to that letter seems to have been made by the defendant, but on September 18, 1920, it wrote one (signed by Fon Rogers, as president) to plaintiffs in which it inclosed its check payable to them for $13,382.50 (based upon the calculation of 667.65 acres) and interest thereon from September 3, 1917, amounting to $1,976.15, a total aggregate of $15,358.65. A part of that letter said:

"I am directed to say, in view of your former claim for a larger amount of this property, that this payment is made without any prejudice whatever to your rights, and is made as a payment in full of amount as shown by the survey. If you are able to show a greater acreage than was shown by the survey made by Amick & Haynes, the Rogers Bros. Coal Company will be glad to pay you therefor."

Plaintiffs thereupon accepted the check and afterwards brought this action against defendant to recover the balance of the purchase money calculated upon the basis of 800 acres at the agreed price of $50 per acre, and upon trial the court (the action having been brought and heard in equity) sustained the prayer of the petition and rendered judgment in favor of plaintiffs for the difference between the amount of the check sent plaintiffs of September 18, 1920, and $20,000, with accumulated interest, and to reverse it defendant prosecutes this appeal.

A number of grounds for reversal are argued in briefs of counsel for defendant, but we deem none of them of sufficient substantiality to require consideration or discussion by us except (1), that time was not of the essence of the contract to sell, of date August 29, 1917; but, if mistaken in this, then (2), that defendant was excused from making the survey within the time stipulated in the contract through an act of God, which as alleged was excessively cold weather preventing it from doing so, and that it made the survey as soon thereafter as practicable; and (3), that, if neither ground (1) nor (2) should prevail, then this action is one in all respects for specific performance, and under the rules governing the application of that remedy plaintiffs are not entitled to recover —each of which will be discussed and determined in the order named.

1. The general rule, long since declared and followed by the courts, is that, at law, time is of the essence of the contract, but that generally it is not so regarded in equity. In the latter forum the question is viewed from the standpoint of the intention of the parties as gathered from the particular involved contract, and, unless the intention to make time the essence of the contract is clearly expressed, or necessarily implied, it will not be so regarded. 6 R. C. L. 898, par. 285. However, in the same text the learned compilers state the universal rule to be that·

"Where the parties have expressly stipulated that time is to be regarded as of the essence of the contract, there is no room for doubt. That is a contract which the parties are competent to make, and when they do make it, it is binding upon courts in equity, unless expressly made so by the contract itself. It may be said, however, that time is an

essential part of a contract, when it appears from the contract that the parties so intended. . . . Any words that show the intention of the parties to be that time shall be of the essence of the contract, or any clause which provides in unequivocal terms that if the fulfillment is not within a specified time the contract is to be void, will have that effect. . . . Time is of the essence of a contract giving to one of the parties an option to purchase property.''

There seems to be no contrary statement of the correct principle by any court or textwriter, and we in an unbroken line of opinions have upheld and applied it under facts calling therefor. One case applying the stated rule that time is of the essence of the contract in an option to purchase, and which is a privilege that the optionee may or may not exercise it at his pleasure, is that of Magoffin v. Holt, 1 Duv. 95, and which has been followed in a number of later cases which may be found by consulting Caldwell's Notes to the Kentucky Reports. Some of our more recent cases recognizing the principles announced by the text from R. C. L., supra, are Monarch v. Owensboro City Railroad Co., 85 S. W. 193, 27 Ky. Law Rep. 380; Ethington v. Rigg, 173 Ky. 355, 191 S. W. 98; Napier v. Trace Fork Mining Co., 193 Ky. 291, 235 S. W. 766; and Schmidt v. Martin, 199 Ky. 785, 251 S. W. 999. Some foreign cases of the same tenor are Cheney v. Libby, 134 U. S. 68, 10 S. Ct. 498, 33 L. Ed. 818; Brown v. Guaranty Trust Co., 128 U. S. 403, 9 S. Ct. 127, 32 L. Ed. 468; Meier Dental Manufacturing Co. v. Smith (C. C. A.) 237 F. 568; Telegraphone Corporation v. Telegraphone Co., 103 Me. 444, 69 A. 767; and Jennings v. Bowman, 106 S. C. 455, 91 S. E. 731. See, also, 4 Page on Contracts, sec. 2108. In that section the learned author says, inter alia:

"A provision in a contract of partition for paying for any excess of land, if shown by a survey within a specified time, makes such time of the essence of the contract, at least if the contract provides that in case of the failure to make such survey the area as provided in the contract shall be taken as conclusive.''

In the South Carolina case referred to (Jennings v. Bowman) almost the exact question here presented was

before the court. The surveys therein, agreed to be made
for the purpose of ascertaining the quantity of land, were
under the terms of the contract to be done within 90 days
from its date, "otherwise the acreage stated is to stand."
The court said that the quoted words "are those used by
the contractors; that they are susceptible of only one
meaning; that they close the door to every negotiation
after 90 days." We conclude, therefore, that the agree-
ment in this case for the survey to be made by defendant
within the year 1917 and if not that it was to take and pay
for the land at the stipulated acreage of 800 acres, was
an express stipulation that time given for making the
survey should be regarded as the essence of the contract,
and ground (1) is, therefore, without merit.

2.   The law with reference to an act of God furnish-
ing a legal excuse for nonperformance of an absolute
agreement is thus stated in 13 C. J. 641, par. 715:

> "The general rule is that an absolute under-
> taking is not discharged by a subsequent act of God
> rendering performance onerous or even impossible.
> And, although the promisor cannot be compelled to
> perform an undertaking impossible of performance
> through an act of God, he cannot, on the ground of
> hardship or impossibility, escape liability in dam-
> ages, in the absence of a reservation covering such
> impossibility of performance.   While in many cases
> there is language to the effect that the act of God
> may furnish an excuse for nonperformance, such lan-
> guage when not mere dictum is in effect the recogni-
> tion of an implied term in the contract rather than of
> an exception to the rule, or of the exceptions to the
> rule existing in case of personal contracts where the
> promisor dies or is physically disabled, or in cases
> of destruction of the subject-matter of the contract."

A great many cases are cited in the notes in support
of that text, two of which are School District No. 1 v.
Dauchy, 25 Conn. 530, 68 Am. Dec. 371, and Berg v. Erick-
son, 234 F. 817, 148 C. C. A. 415, L. R. A. 1917A, 648.

In the Connecticut case the court lays down the rule
which it calls a "well-settled" one, that where one makes
an absolute promise, without exception or qualification,
to do a thing by a given time, he is bound thereby, unless

the doing of the thing becomes unlawful before time for performance, and then says that: ·

"Where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract."

The opinion then instances cases where a lessee under contract to repair is not excused (unless by statute) by the destruction of the premises by lightning, flood, or any other agency over which he had no control.

In the Berg case, supra, one of the contractors agreed to pasture and look after 1,000 cattle. The pasture contracted to be furnished by defendant was destroyed by drouth, but the court held that it did not excuse or relieve him from the obligations of his contract, since he could have provided against such an event. Under those authorities we do not think the defense herein interposed as an act of God (cold weather) sufficient to excuse defendant from performing its agreement to make the survey in 1917. However, if mistaken in that, then we are convinced that the testimony in the case does not establish the defense.

The contract for the sale of the land, as we have seen, was made and executed on August 29, 1917. There is no pretense that any effort was made to commence the survey of the property until October 17 thereafter, and only one surveyor was so empolyed. Instead of surveying the Long Branch tract so as to complete it in accordance with the terms of the contract and within the time provided therefor, the single surveyor first ran out the Victoria Williamson tract (which defendant had also purchased), and then began to survey the Long Branch tract which contained plaintiffs' undivided interest that they sold to defendant. The surveyor testified that he was overtaken with excessively cold weather before the end of that year and was compelled to abandon the undertaking. It will therefore appear that defendant lost much time before employing a surveyor after the execution of the contract, and when one was employed it did not require him to first survey the Long Branch tract so as to comply with its agreement in its contract with plaintiffs. Moreover, there was nothing to prevent defendant from employing additional surveyors within sufficient

time to enable them to survey the Long Branch tract within the time fixed in the contract. In employing only one surveyor to work on the ground it ran the risk of his work being interrupted by cold weather, which might have been anticipated, and was not a sufficient good-faith effort on its part to excuse it from nonperformance of its contract, even if subsequently there occurred an act of God preventing it from complying with its contract within the prescribed time. We therefore conclude that this ground is without merit.

3. Under ground (3) it is vigorously insisted (a) that, assuming for the purposes of the case the correctness of our disposition of grounds (1) and (2) under the theory that the question as to time being of the essence of the contract should be governed by the common-law rule, and not the one prevailing in equity, still the relief sought in this case is, in its essence, one for specific performance, and should be governed by the prevailing equity doctrine upon that question; and (b) that specific performance will not be decreed if the contract and the situation of the parties be such that it would be harsh and oppressive to do so. In support of subdivision (a), the case of Jones v. Prewitt, 128 Ky. 503, 108 S. W. 867, 33 Ky. Law Rep. 358, is relied on. But an examination of that case reveals that it was in every particular one filed in equity to enforce specific performance. The purchaser, who was the defendant in that case, declined to accept the tendered deed, and the action was filed to compel him to do so, with the incidental relief of also recovering from him the balance of the purchase money that plaintiff insisted was due. In the course of the opinion the cases of Butt v. Riffe, 78 Ky. 352; Bird v. Bank of Williamstown, 13 S. W. 430, 11 Ky. Law Rep. 868, and Weller v. Fidelity Trust & Safety Vault Co., 64 S. W. 843, 23 Ky. Law Rep. 1136, were cited and commented upon. Each of them was an action on purchase-money notes, and was filed after the execution and delivery of the conveyances, and, in a general way, the questions presented by the defenses were very analogous to the one here relied on.

The same equitable principles relating to the remedy of specific performance were urged in those cases, but they were disallowed by this court. We will not repeat the facts of those cases, since they may be found by refer-

ence to the opinions. . In the Jones case the contract of purchase obligated Jones to pay the stipulated price per acre within a described boundary. When the deed was tendered him, with a demand for the payment of the balance of the purchase price, he declined to pay or accept the deed, upon the ground that a railroad company had condemned a right of way through the tract, covering a little more than 5¼ acres, and for which his vendor had collected damages, including the value of the land contained in the right of way. In the contract the fact of the existence of the right of way was entirely ignored, and nothing appeared therein to remotely indicate that it was considered by either party to the contract of purchase at the time it was executed. In the course of the opinion it was said:

> "It cannot fairly be said that it was in the contemplation of the parties, when the contract was entered into, that Jones should be required to pay for this (right of way) land. It seems evident that, if the matter had been discussed, or it had been suggested that he would be required to pay for it, he would have declined to do so, especially as he was buying the land at so much per acre, and expected under the terms of the contract to be placed in the possession of."

Under those circumstances, and in view of the rule against harsh and oppressive consequences, applicable in the specific enforcement of contracts—to be discussed later in considering subdivision (b)—the opinion denied the relief sought by the plaintiff in that case, and in doing so did not depart from the uniform holdings of this court, both before and since the rendition of that opinion. We therefore conclude that the insistence made under subdivision (a) supra, is not applicable under the facts of this case.

In disposing of subdivision (b) it should be admitted at the outset that the universal rule is that:

> "If a decree of specific performance would work a hardship or injustice upon the defendant, or operate oppressively upon him, a court of equity will decline to interfere."

That rule was quoted with approval in the Jones opinion from the text in 26 Am. & Eng. Enc. of Law,

67. Other authorities and cases sustaining it are cited in that opinion. It was also recognized and applied by us in the more recent case of Lexington & Eastern R. Co. v. Williams, 183 Ky. 343, 209 S. W. 59, wherein we said:

"No rule of equity is more deeply rooted in the law than the one that a specific performance of a contract is not granted as a matter of right, but it is always addressed to the sound and reasonable discretion of the court, to be exercised according to the circumstances of each case."

And, since the enforcement of the contract involved in that case would entail harsh and greatly injurious consequences to defendant, "which he cannot be deemed to have contemplated when he executed the contract," specific performance was denied.

The rule against harsh and greatly oppressive consequences, so as to defeat the equitable relief of specific performance, is not applicable, however, except where such consequences cannot be deemed to have been contemplated by the parties at the time of the making of the contract sought to be specifically performed. The consequence in this case—i. e., the taking of the land at the agreed 800 acreage, and paying for that quantity at the stipulated price per acre—was most emphatically within the contemplation of the parties at the time of the contract here involved, so much so that they expressly so stipulated in the contract, which they had the legal right to do. It therefore cannot be said that the consequences though in the light of subsequent events they might be harsh and oppressive, were not within the reasonable contemplation of the parties, so as to entitle defendant to invoke the equity rule relied on in subdivision (b) of ground (3) under consideration, and the cited cases and authorities in its support do not sustain it, and are not applicable to the facts of this case.

There is nothing inequitable in the conclusions we have herein reached. The parties did not know the exact quantity of land involved, and plaintiffs desired the contract to become fixed and definite at as early a date as possible, and to bring about that end it was specifically agreed that defendant might survey the land and take it at the ascertained quantity, but unless it did so within the year 1917 the quantity should become fixed at 800

acres. The parties were sui juris; their contract was in no wise illegal; and they must be held bound by its terms.

The judgment so holding is free from error, and it is affirmed.