## Rounds et al. v. Owensboro Ferry Company.

(Decided March 9, 1934.)

R. MILLER HOLLAND and EARL S. WINTER for appellants Frank T., James B., and Marie Rounds.

C. W. WELLS for appellant Harry B. Rounds.

CARY, MILLER & KIRK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 28, 1930, and long prior thereto, the appellants and defendants below, three brothers, Frank T., James B., and Harry B. Rounds, owned a ferry franchise to operate a ferry across the Ohio river at Owensboro, Ky., and which prior to that time had been operated by only two of the brothers, Frank T. and James B. Rounds, as partners under the firm name of Owensboro Ferry; their brother, Harry B. Rounds, although a third joint owner in the franchise and equipment necessary for the operation, was in no wise interested in the prosecution of the business, but suffered and permitted his two brothers to operate the ferry on their own responsibility and to take and receive the net proceeds exclusively to themselves. They had suffered and permitted the property and the franchise to become run down and neglected so that it was of but little service to the traveling public. On that day the members of the operating partnership, Frank T. and James B. Rounds, with the wife of one of them, entered into a written lease contract with Thomas S. Seay and Byrne McDaniel, whereby the partners leased to Seay and McDaniel the franchise and some property used in connection therewith for a period of two years "beginning April 1, 1930, and ending March 31, 1932." The lease also covered the necessary real estate at the termini of the ferry required in its operation, and a stipulation therein said: "It is further understood and agreed between the lessors and lessees that the lessees have the right and privilege at their option to renew and extend this contract and lease for and during the period of eight additional years from and after the expiration of the two years hereinabove provided for, and if said lessees desire to exercise this right and option they shall give to the lessors written notice to that effect at least thirty days before the expiration of said two year period; and if the lessees so elect and so notify the lessors, then this period of lease shall be extended for said eight additional years upon the same terms and condi-

tions as hereinabove set out. It is further agreed that if the lessees herein shall desire to extend this lease period beyond the ten years herein provided for, in like manner the lessees shall have the option of again extending the term hereof for five years after the original ten year term upon the same terms and conditions, by giving notice in like manner.''

It was further provided therein that a part of the consideration for the lease was that the lessees should reconstruct and build up a paying ferry business at the point designated, and, as compensation for such rebuilding and reconstruction, the lessees were to pay nothing to the lessors during the first year of the two-year term of the lease; but they agreed to pay for the second year a royalty rental of 40 per cent. of the net income from the operation, excluding any salary for either of the lessees. The latter took charge of the property on April 1, 1930, and later leased two boats from the partnership of Frank T. and James Rounds, which were repaired and put into operation. The first year the lessees, who in the meantime became incorporated under the name of Owensboro Ferry Company to which the leased privileges were assigned by the individual lessees, made a handsome net profit over and above the outlay in repairing and equipping the property and during the second year the profits ran as high as $1,100 for some months and never lower than $800. No written or other notice was given within thirty days immediately preceding March 31, 1932, the date upon which the two-year term ended; but on March 14th, plaintiff and appellee, Owensboro Ferry Company, gave notice of its intention and purpose to renew, continue, and extend the lease for the eight additional years provided in the option contained in the lease; but it was fourteen days after the time had expired for giving such notice under plaintiff's option contained in its lease. Some conversation and conduct of the lessors created the impression on the part of plaintiff that a surrender of the lease at the expiration of the two years (April 1, 1932) would be demanded and it then filed this equity action in the Daviess circuit court against the lessors and their brother, Harry B. Rounds, who declined and refused to sign the lease, seeking to enjoin them from repossessing themselves of the property, or from insisting on such right because of the failure to give the stipulated notice of extension or renewal.

The petition set out that the original lease was one for fifteen years covering the first two-year period, as well as the two additional optional periods of eight and five years provided for therein, with, as was alleged in the petition, the right and privilege of the lessees to terminate the lease at the end of the first two-year period by giving thirty days notice, but which they failed to do, and which, as contended by plaintiff, automatically extended the lease for the first additional eight-year term. Those allegations were made in the face of the express provisions to the contrary contained in the lease, a copy of which was filed with the petition and which rendered it fatally defective, but the court overruled defendant's demurrer filed thereto. Later plaintiff filed an amended petition in which it alleged that the original lease contract was actually entered into on April 17, 1930, and the term began on that day, since the writing was not acknowledged by the lessors until that day, although they had each signed it and delivered it to the two individual lessees for their signature, but which they had neglected to attach. It was binding on the lessors from the time of their signatures without acknowledgment, which was only for the purposes of recordation.

It was also alleged in the amended petition that the ferry at the beginning of the lease had been practically abandoned and was without necessary equipment and the approaches to it were impassable and that plaintiff was compelled to and did expend $3,467 in repairs and equipment; that a profitable business had been built up since the lessees took charge and it would be inequitable to deprive them of the benefits of an extension or renewal under the circumstances, which allegation took no cognizance whatever of the stipulations in the lease that such repairs were expressly assumed by the lessees in consideration of no rental payments for the first year of the two-year term. The amended petition further averred that Frank T. Rounds was an employee of plaintiff from the time it took charge in operating the ferry and that he received $3 per day for his services; that he possessed knowledge which he obtained as such employee, as late as January or February in 1932; that plaintiff had entered into some contracts (one of which was with a radio station at Evansville, Ind., advertising the ferry) extending over a period beyond the termination of the lease (April 1, 1932, and that he (Frank T.

Rounds) did not call plaintiff's attention to the fact that in order to extend the lease it should give the stipulated notice which the lease provided as a condition precedent to the exercise of the option; and, therefore, defendants were estopped to insist upon a forfeiture (or more appropriately a lapse of the option) and which, if correct, would establish the principle of law that it is the duty of an optioner to expressly call the attention of his optionee before the time for the exercise of the option arrived that he must do so by that time. But, although plaintiff's contention is in effect the assertion of such a legal principle, its counsel cites no case in support thereof and we have been unable to find any. On the contrary, we are convinced that none such exists and that the declared law is exactly opposite thereto.

The amended petition also insists that the silence of Frank T. Rounds as one of plaintiff's employees in some mysterious way worked a ratification of the delayed notice (given on March 14, 1932) that plaintiff finally gave of its intention to exercise its option; but just how that conclusion may be reached in the light of the elements necessary to create a valid ratification is not pointed out to us. To begin with, there can be no ratification of anything which had not attempted to be done before the alleged ratifying acts were committed. Prior to March 14, 1932, plaintiff attempted in no manner, verbal or otherwise, to notify defendants of its intention to take advantage of its option, and, therefore, nothing that Frank T. Rounds or other defendant may or may not have done prior to March 1, 1932, could operate as a ratification of an act that had to be thereafter performed, if at all. By the same token nothing that either of the defendants did or omitted to do after that date could ratify what had been done, or operate to estop them from insisting upon its performance (which in this case was the giving of the stipulated notice) unless such acts or conduct operated to the prejudice of plaintiff. But no such claim is made in this case, since every expense plaintiff incurred for repairs, equipment, advertising, or for any other purpose looking to the future operation of the ferry had been done before the time for the giving of the notice arrived and nothing was done thereafter whereby plaintiff was induced to incur additional expense for the future operation of the ferry beyond its ordinary running expenses. Therefore, one of the fundamental elements of an estoppel is

entirely lacking. Notwithstanding such allegations in the amended petition, defendant's demurrer submitted to it and to the petition as amended was likewise overruled with exceptions.

The two defendants Frank T. and James P. Rounds, and the wife of one of them, filed their joint and separate answer in which the allegations of plaintiff's petition as amended were denied, and Harry B. Rounds in his separate answer, which he made a counter-claim against plaintiff, also denied the averments of the petition and averred that he not only did not agree to or sign the original lease, but that he both verbally and in writing notified the two individual lessees to that effect and expressly stated to them in writing, saying: "As you know I refused to sign or approve the proposed lease to you and you are hereby again notified that neither I nor my interests in the property are bound in any way by any lease you have, and whatever you may do under any such lease will be at your own risk." That was given on April 10, 1930, before the lessees had incurred any expense in repairing the property, but it was preceded by an oral notification to the same effect when Harry B. Rounds was approached by the lessees to sign the lease contract. In his answer as amended he sought by counter-relief a forfeiture of the lease property so far as he was concerned, but the court denied him that relief in the judgment appealed from. Following pleadings made the issues and upon final submission, the court sustained the prayer of the petition and granted the perpetual injunction prayed for therein, except as to Harry B. Rounds; but, as stated, it dismissed his counterclaim, and from that judgment defendants prosecute this appeal. .

From the foregoing recitations it is plainly apparent that the contract between the parties created the relationship of landlord and tenant or lessor and lessee, and not that of a joint adventure as is asserted by counsel for plaintiff and which the court in its opinion apparently approved. The very terms of the writing designate the parties as "lessors" and "lessees" and it unmistakably stamps them as such. It would, therefore, require a stretch of the imagination beyond our capacity to make, as well as the employment of a process of reasoning beyond our power to comprehend, to say that the contract created the relationship of partner or joint adventurers in the operation of the ferry. It will fur-

thermore be observed (and to which we have already referred) that the stipulations of the writing provided for full and complete compensation for any outlay for repairs or additions made by plaintiff as successor to the lessees by giving the use of the ferry for one year without the payment of any royalty or rent, and from which no equity may arise in favor of plaintiff because of such outlay, since it received the agreed consideration therefor. The case, therefore, we repeat, is simply one where a written option is given to renew the lease upon express terms and conditions to be performed by the optionee on or before a designated time and which it failed to do solely on the ground of neglect as expressly testified to by the lessees when they stated that they were under the impression that the lease required, not a notice to exercise the option or renewal or extension, but one of their determination to discontinue the lease, or rather to not renew or extend it. They do not claim (on the contrary they disclaim) that Frank T. Rounds or any of the defendants did or said anything to so mislead them, or to in any manner bring about their misconception of their contract. While they insist that Frank T. Rounds, as their employee, obtained knowledge of their purpose to exercise their option before the time arrived for that purpose, yet they stated no fact remotely indicating that the specified method or time of such exercise would be waived or should be any other than the specified one. If such employee was aware of facts indicating a purpose on the part of the lessee to continue the lease, he had the right to assume that it would be done in the manner that the contract required, and he, we repeat, did nothing to indicate that such manner would be waived by him or by any of the other lessors.

Such being the status of the parties and of the contract, the only questions in the case are: (1) Whether the specified time and manner of exercising the option are of the essence of the contract, and, if it should be answered in the affirmative, then, (2), whether such requirements were waived by defendants, or they in any manner estopped themselves from insisting on their literal compliance? There is nothing in the pleadings of plaintiff making a contrary contention to an affirmative answer to question (1), but they do so in briefs filed in this court. They insist upon the general rule; that at law time is always of the essence of the contract,

but that it is not always so in equity unless the intention to make it so "is clearly expressed or necessarily implied," and in support of which reliance is had on the case of Rogers Brothers Coal Co. v. Day, 222 Ky. 443, 1 S. W. (2d) 540, 542, and others cited therein. But an examination of that opinion, as well as those in the cases cited therein, will disclose that the equity rule referred to is the one applicable to contracts generally, but does not apply to contracts creating options to purchase or lease property. On the contrary such opinions expressly recognize the long established and universally declared rule that in such contracts (creating options) time is of the essence thereof both in law and equity, as is shown by this excerpt from the text in 6 R. C. L. 898, par. 285, saying: "Time is of the essence of a contract giving to one of the parties an option to purchase property." That statement is expressly incorporated in the Day opinion as stating the correct legal principle. Moreover, in the same excerpt in that opinion, taken from the publication referred to, it is stated as applicable to contracts in general that, "any words that show the intention of the parties to be that time shall be of the essence of the contract, or any clause which provides in unequivocal terms that if the fulfillment is not within a specified time the contract is to be void, will have that effect." That language is capable of embracing conditions subsequent whereby a contract becomes forfeited as well as embracing an option to purchase or lease property, although courts are more inclined to avoid a contract for broken conditions subsequent than they are to deny a defaulting optionee the privilege of his option to acquire either an absolute or temporary interest in property. The one terminates the right in the contract during the period of its fulfillment, while the other is a condition precedent to the acquirement of the right, and it is the failure to observe such distinction that accounts for a number of cases cited and relied on by counsel for plaintiff as supporting their contentions of ratification, waiver, estoppel, and other excuses urged in avoidance of the neglect of their client to comply with the specified option by giving the required notice, none of which have any application to the facts or the legal principle involved in this case.

Here, the lease contract clearly and unambiguously provides, in effect, that no right of renewal or extension of the lease shall be available to the lessees unless "written notice to that effect" shall be given the lessors "at

least thirty days before the expiration of said two year period." It is, therefore, clear that the parties to the lease employed language showing their intention "to be that time shall be of the essence of the contract." However, if it were otherwise as to contracts generally, then, we repeat, that the rule is different as applied to option contracts such as the one here involved. In addition to the above text in 6 R. C. L., supra, which we quoted and approved in the Day opinion, it is stated in 13 C. J. 688, that: "As a general rule a time fixed by a contract within which an option may be exercised is to be regarded as of the essence." In note 51 to that text a number of cases from federal and state courts are cited in support thereof, including the one of Smith v. Howard, 105 S. W. 411, 32 Ky. Law Rep. 211, in which we said in the opinion: "In options to buy or to sell on account, whether gratuitous or based upon a consideration, time is of the essence of the contract. Jones v. Noble, 3 Bush, 694. The main ingredient in the agreement is time. It can never be regarded as nonessential where the parties have been at pains to make it the particular point." The text in 35 C. J. 1018, sec. 145, in discussing the relationship of "Landlord and Tenant," says: "Where the right to continue the tenancy, or the right of exercising an option to take a renewal, is dependent upon the performance of covenants or conditions, performance of such conditions or covenants is a prerequisite to the exercise of the right to require a renewal, and nonperformance will defeat the option." The text is sustained by a great number of cases cited in the notes.

On page 1020 same volume, it is said: "Where the option to continue or renew is expressly conditioned upon a request or notice, the right cannot be enforced over the objection of a failure or omission in this regard. A lease for a year with the option to keep the premises three years 'if so desired' requires the lessee to give notice if he should elect to hold for the additional time." Among the many cases cited in support of that text is the one of Klein v. Auto Parcel Delivery Co., 192 Ky. 583, 234 S. W. 213. On the next page (1021) it is said: "In order to be effective the notice must be given within the time fixed by the lease," and many cases are cited in note 58 in support thereof. On page 1043 of the same volume, sec. 189, the text says: "If the time within which the acts [exercise of an op-

tion to lease or purchase land] are to be done in order to perfect the right to a conveyance is expressly limited and made a condition of the right, the lessee must comply with the condition in that regard, and if the option is not accepted within the time so limited, it expires unless further time is granted, or unless the provision is waived." The case of Page v. Hughes, 2 B. Mon. 439, is cited in support of that text. See, also, 66 C. J. 502, sec. 27. The opinion could be greatly lengthened by referring to other text-writers to the same effect, but, since they are all in accord, it is manifestly unnecessary to do so.

Coming now more specifically to our own opinions, we said in the Day Case: "One case applying the stated rule that time is of the essence of the contract in an option to purchase, and which is a privilege that the optionee may or may not exercise it at his pleasure, is that of Magoffin v. Holt, 1 Duv. 95, and which has been followed in a number of later cases which will be found by consulting Caldwell's Notes to the Kentucky Reports. Some of our more recent cases recognizing the principles announced by the text from R. C. L., supra, are Monarch v. Owensboro City Railroad Co. [119 Ky. 939], 85 S. W. 193, 27 Ky. Law Rep. 380; Ethington v. Rigg, 173 Ky. 355, 191 S. W. 98; Napier v. Trace Fork Mining Co., 193 Ky. 291, 235 S. W. 766; and Schmidt v. Martin, 199 Ky. 785, 251 S. W. 999. Some foreign cases of the same tenor are Cheney v. Libby, 134 U. S. 68, 10 S. Ct. 498, 33 L. Ed. 818; Brown v. Guarantee Trust Co., 128 U. S. 403, 9 S. Ct. 127, 32 L. Ed. 468; Meier Dental Manufacturing Co. v. Smith [C. C. A.] 237 F. 568; Telegraphone Corporation v. Telegraphone Co., 103 Me. 444, 69 A. 767; and Jennings v. Bowman, 106 S. C. 455, 91 S. E. 731. See also, 4 Page on Contracts, sec. 2108."

See, also, the case of Wieck v. Glindmeyer, 229 Ky. 28, 16 S. W. (2d) 487, involving the same principle now under discussion and in which we held that the lessee had lost his right of renewal by failing to give the specified notice. Compare the case of Kozy Theatre v. Love, 191 Ky. 595, 231 S. W. 249. The domestic cases referred to, with those cited therein, clearly establish the fact that we are in accord with practically if not all other courts in holding that an option to purchase property or to obtain any interest therein, either originally or by way of extension or renewal of a prior one, is of the essence of the contract, and that an optionee in

order to obtain the benefit of his option must follow the requirements creating it, and unless he does so he loses his right. An extensive discussion of the law applicable to the facts of this case is made in an annotation to the case of Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47, and reported in 27 A. L. R. 976. The annotation begins on page 981 of the latter publication. The opinion in the cited case recognized and approves the rule as stated, but holds that under the facts of the case it would be "unconscionable to enforce literally the condition precedent to the lease," and which facts (none of which appear in this case) created equities that would authorize a chancellor in refusing to enforce the option. There being no such excusing facts in this case, the opinion, in so far as it declined to enforce the forfeiture, is not applicable.

In stating the general rule, without the equitable excusing facts, the annotator says: "Where a lessee has a right of renewal provided he gives notice at or before a specified time to the lessor, of his intention to exercise the privilege of renewal, it is ordinarily held that the giving of the notice is a condition precedent which must be complied with within the stipulated time, and that, in the absence of special circumstances warranting a court of equity in granting relief, the right to a renewal is lost if the notice is not given in accordance with the provisions of the lease." Many cases from different courts are cited in support of that statement and they are referred to, discussed, and quoted from during the course of the annotation. Many of them present conditions almost exactly similar to those presented by this record and the courts with one accord, acting as an equity tribunal, enforced the forfeiture because of the failure of the optionee to observe the requirements of his option. Among them is the one of Doepfner v. Bowers, 55 Misc. 561, 106 N. Y. S. 932, in which the failure of the lessee to give the required notice was due to illness incurred while on a trip to Europe, but which the court held in the light of other facts was insufficient to relieve him of his duty to do so. After stating that the parties had made the time of giving notice a part of their contract as much so as any other stipulation contained in it, the court, inter alia, said: "'Hard cases make bad law. Hard cases must not be allowed to make bad equity, any more than bad law.' Moore v. Pierson, 6 Iowa, 279, 296, 71 Am. Dec.

409. 'Hard cases are the quicksands of the law.' Metropolitan Nat. Bank of Kansas City v. Campbell Commission Co. [C. C.] 77 F. 705. 'There is in all such instances, great danger of the courts drifting away from fundamental. grounds upon which a rule of equity is builded, and getting out upon the wide sea of adventure without chart or compass. While rules and principles of equity jurisprudence are constantly expanding in the aspiration for justice in the administration of law by the courts, they should never forget that "the sprout is to savor of the root, and go the same way." ' "

In this case there are no ameliorating circumstances creating in plaintiff any equitable rights which a court of equity is called upon to protect. We have seen that it was amply remunerated for all outlays it made in equipping the ferry for successful operation. In addition thereto it was expressly stipulated in the leasing of two boats from the lessor that any additions made thereto in the way of repairs should revert to the lessees upon the expiration of the lease. Therefore, there being nothing to entitle them to invoke any such equitable principles, they should abide the consequences of their failure to give notice, unless they were justified therein by some act or conduct of some of the lessors. There being none such, as we have determined, the right to renew the lease was lost by plaintiff's failure to give the notice which was due entirely to the neglect of its agents and officers and not to any misleading conduct or act on the part of any of the lessors.

In any event the court was in error in failing to adjudge to Harry B. Rounds a forfeiture of the lease so far as he was concerned, since he never became a party thereto and repudiated its execution in every way known to the law; but, since we have concluded that the entire judgment was erroneous as to all of the owners of the ferry, Harry B. Rounds will obtain the benefit of our conclusion the same as if his counter-relief had been granted.

Wherefore, for the reasons stated the judgment is reversed, as to all of the appellants, with directions to set it aside, and to dismiss the petition, and for other proceedings not inconsistent with this opinion.