## Pieck v. Carran.

(Decided Dec. 10, 1937.)

ROGERS & ROGERS for appellant.

S. L. BLAKELY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Reversing.

J. B. Moncrief owned certain property located on the Lexington pike near the city of Covington, Kenton county, Ky., which included an oil and gas station. On August 22, 1932, Moncrief leased the property, including the oil station, to the appellee, for a period of 3 years, with an option to renew the lease for an additional term of 3 years at the same rental as stipulated in the original lease, which was $100 per month. The option or right to renew the lease reads as follows:

"Upon the expiration of the three year term of this lease it is hereby agreed between the parties that the Lessee may at his option renew this lease for an additional term of three years at the same rental as stipulated in the above agreement, to-wit: $100.00 per month. In the event this lease is renewed the lessee shall give written notice at least six months before the expiration of the first three year term, but the right to renew shall not be forfeited until 15 days after the lessee shall be notified in writing that such election must be made."

Appellee took possession of the leased property and operated the gas and oil station thereon for a period of 18 months, or until the 22d day of February, 1934, when he entered into a contract in writing with Charles Sanderson, whereby he leased to Sanderson the entire premises covered by the Moncrief lease, for the balance of the term of 18 months, for the agreed rental of $135 per month. Appellee's contract with Sanderson, among other things, with respect to Sanderson's right to renew the lease, provided as follows:

"Upon the expiration of the eighteen (18) month term of this contract of sublease, it is hereby agreed between the parties that said Sub-Lessee, the said Charles Sanderson, may at his option renew this lease for an additional term of three (3) years at the same rental as stipulated in the above agreement, to-wit, One Hundred Thirty-Five ($135.00) per month. In event this sublease is renewed, the Sub-Lessee shall give written notice to the Sub-Lessor within fifteen days after the Sub-Lessor receives a notice in writing from the Lessor (J. B. Moncrief) that such an election must be made."

However, on December 6, 1933, preceding appellee's contract with Sanderson, J. B. Moncrief conveyed the leased property to the appellant, Mildred Pieck, which conveyance, of course, was subject to appellee's lease, and appellant, recognizing that she had succeeded to all the rights or had taken the place of Moncrief as lessor, on March 7, 1936, she delivered to appellee the following letter or notice:

"Covington, Kentucky, March 6, 1935.
"Mr. Earl Carran,
"Dear Sir:
"As you probably know, your three years lease expires August 22, 1935. Will you please let me know by March 23, 1935, whether or not you intend to renew this lease. If so, I will expect you to sign a renewal agreement together with your father. Respectfully,
"Mildred Pieck."

Upon receipt of the above letter appellee called appellant on the telephone and told her that it was his intention to renew the lease but expressed the opinion that a new written lease was not necessary, but he did not at any time notify appellant in writing of his in-

tention to renew the lease, and appellant having not received any such written notice, on March 23, 1935, she treated the lease as forfeited and leased the property to one O. A. Bakhaus.

In October, 1935, appellee, as plaintiff below, brought this suit against appellant, defendant below to recover of her for the alleged breach of the lease or contract with him. In the original petition he set out the various contracts and leases in substance as we have heretofore stated, and alleged, among other things, that during the pendency of the lease and pursuant to the terms thereof, he did, on March 23, 1935, exercise his option to execute the new lease with Earl W. Carran as surety, or to continue the terms of the old lease, and that appellant refused to renew the lease and dispossessed him of the property and entered into a lease contract with O. A. Bakhaus, and because of said breach of contract on part of appellant he had been damaged in the sum of $35 per month for the term of 3 years, or, in the sum of $1,260, and prayed to recover that amount. Later he filed his amended petition alleging that defendant was refusing to renew the lease with him and that he was willing and able to comply with the terms and provisions of the original lease and had offered to do so but that defendant has refused to accept his offer or to renew his lease or to put him in possession of said property under the terms of the lease or renewal thereof, and asked that defendant be required to renew the lease with him and put him in possession of the property.

Appellant filed her answer in which she pleaded the contract between plaintiff and Sanderson, claiming that by the terms of the contract with Sanderson plaintiff assigned his entire interest in the lease to Sanderson and the contract was a complete assignment of his lease, but not a sublease. Plaintiff filed his reply denying the allegations of the answer, and further pleaded, among other things, that Sanderson failed to renew his sublease as required by the contract, and thereby forfeited same and that Sanderson's interest in the leased property reverted to him, plaintiff, and that he had the right to maintain this action against appellant for her failure to renew the lease as set out in the petition.

By subsequent pleadings the issues were made and by agreement of parties the cause was transferred to equity. The evidence was taken and the cause submitted to the court and the court held and adjudged

that appellant should execute a new lease to appellee of the same terms and conditions and for the same property set out and described in the original lease between J. B. Moncrief and appellee, and that appellant pay appellee the sum of $10 per month for each month beginning August 22, 1935, to the date of the execution of the new lease, and that, in the event appellant shall fail to execute said lease and tender the same to appellee within the period of 10 days, the appellee will recover of appellant the sum of $360. Appellant excepted to the judgment and prayed an appeal, which was granted below, and also filed her motion with this court to grant the appeal.

A reversal of the judgment is asked upon various alleged grounds, chief among which is that appellee did not exercise his right to renew the contract as required in the original lease and thereby forfeited the lease and all rights and intrest therein, and that appellant had the right to terminate the lease and lease the property to Bakhaus. On the other hand, it is the contention of appellee that he did offer to renew the lease and did all he could to do so as required by the terms of the lease, and relies upon the verbal conversation he had with appellant after he received the written notice of March 6, 1935, to make known to her whether or not he desired to renew the lease.

Appellee admitted in his evidence that he did not give appellant the 6 months' written notice required by the lease and, also admitted that he received the letter or notice from her dated March 6, 1935, but does not claim that he then or at any time within 15 days after he received her letter gave appellant any written notice, but that he called her on the telephone and told her that he expected to renew the lease and she said that would be all right, and asked him if his father would be willing to sign a new lease, and he told her that his father would sign the lease but that it was his impression that a new lease was not necessary, and that she made no reply to that statement.

Appellant testified that in the conversation over the telephone with appellee she asked him when he was going to send her a written agreement and that she would wait until Saturday, and that, on the Saturday referred to, he told her he thought he would lease the property and that he would send her the notice and a written agreement; that she never received such written agree-

ment or notice until on the 27th of March, which was more than 15 days after appellee received her notice of March 6th, which was delivered to him on March 7th. Appellant's evidence is undenied, and it does not materially conflict with the evidence of appellee. His evidence relating to the telephone conversation does not amount to or show that he had as much as a verbal contract with appellant to renew the lease. He only said that he told her that he expected to renew the lease and she said that would be all right, and he further said that no conclusion was arrived at during that conversation as to whether or not a new lease would be in writing. It is to be noted that the lease plainly provided that in the event it is renewed the lessee shall give written notice at least 6 months before the expiration of the first 3-year term, with the proviso that the right to renew it shall not be forfeited until 15 days after the lessee shall be notified in writing that such election must be made. But that does not mean that the appellant, in any event, waived written notice of the intention of the appellee to renew the lease. Upon receipt of such notice by appellee it then became his duty to notify the appellant in writing of his intention to renew the lease. It follows that appellee failed to comply with the terms of the lease and thereby forfeited same and has no right to maintain this action. Rounds v. Owensboro Ferry Co., 253 Ky. 301, 69 S. W. (2d) 350.

This conclusion makes it unnecessary to pass upon other questions raised.

For the reasons stated, the motion for appeal is sustained, appeal granted, and the judgment reversed for proceedings consistent with this opinion.