RENDERED: OCTOBER 18, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0427-DG

SUPERASH REMAINDERMAN, LP      APPELLANT

ON DISCRETIONARY REVIEW FROM FAYETTE CIRCUIT COURT
v.      HONORABLE LUCY A. VANMETER, JUDGE
ACTION NO. 22-XX-00042

ASHLAND, LLC; AND
SPEEDWAY, LLC      APPELLEES

**AND**

NO. 2023-CA-0566-DG

SUPERASH REMAINDERMAN, LP      APPELLANT

ON DISCRETIONARY REVIEW FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 23-XX-000002

ASHLAND, LLC; AND
SPEEDWAY, LLC      APPELLEES

**AND**

NO. 2023-CA-0578-DG

SUPERASH REMAINDERMAN, LP                                    APPELLANT


ON DISCRETIONARY REVIEW FROM HARRISON CIRCUIT COURT
v.                      HONORABLE JAY DELANEY, JUDGE
                        ACTION NO. 22-XX-00003


ASHLAND, LLC; AND
SPEEDWAY, LLC                                                APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

ECKERLE, JUDGE:  This Court granted discretionary review to Appellant,

SuperAsh Remainderman, LP ("SuperAsh") from orders of the Fayette, Jefferson,

and Harrison Circuit Courts.  Those orders affirmed the orders of the Fayette,

Jefferson, and Harrison District Courts, respectively (the "District Courts"),

dismissing SuperAsh's forcible detainer complaints against Appellees, Ashland,

LLC ("Ashland"), and its sub-lessee, Speedway, LLC ("Speedway").  SuperAsh

argues that the leases between it and Ashland expired without renewal, and that the

Ohio and Kentucky Courts should not have granted equitable relief to cause the leases to continue to operate contrary to their terms. SuperAsh further argues that the District Courts were without jurisdiction to grant relief on equitable grounds, and the Circuit Courts should not have affirmed them.

However, Ashland had commenced this litigation in Ohio, and the Ohio Court made factual and legal findings that the Kentucky Courts interpreted as binding upon them. Those Ohio findings are currently on appeal and are not final. Moreover, the Kentucky District Courts also fashioned equitable relief, which is reserved for Circuit Courts as Courts of general jurisdiction. At the outset, more serious questioning should have occurred as to the reasons that these cases found themselves in Kentucky District Court, as they are highly atypical of litigation there. Much more analysis was warranted as to the type of relief District Courts could offer, and as to why the Kentucky litigation was not commenced in Kentucky Circuit Court. We find that regardless of an Ohio Court's findings, the Kentucky Courts must make initial findings of their own jurisdiction. Here, they addressed crucial issues too summarily without adequate analysis and the necessary, prerequisite, jurisdictional findings. Moreover, even where the District Courts had jurisdiction over some parts of the dispute, they applied incorrect factual and legal standards to determine issues.

Hence, we reverse the Circuit Courts' summary orders affirming, and the Circuit Courts must reverse and remand these matters to the respective District Courts for further adjudication. The District Courts may properly conduct forcible detainer proceedings, but they must confine themselves jurisdictionally to addressing matters of law and not equity, except where specifically and statutorily authorized to do so. They cannot adopt the Ohio Court's theories of equitable remedies. On matters of law, the District Courts must make factual findings and conclusions of law on the issues they are empowered to decide: renewal of leases by their own terms and the terms of subsequent contracts, and waiver of compliance by the acceptance of rent and Ashland's other legal, non-equitable defenses.

## I.   FACTUAL AND PROCEDURAL HISTORY

The underlying facts are not in dispute. Ashland is a publicly-traded oil and chemical company. It is also the ground tenant of three Kentucky properties: 803 South Broadway in Lexington; 4900 Outer Loop in Louisville; and 102 Ladish Road in Cynthiana. These three properties are part of a larger group of leases between Ashland and SuperAsh governing 24 properties across five states (the "Ground Leases").

In 1990, Ashland entered into a sale-leaseback arrangement with SuperAsh and State Street Bank for all 24 properties. State Street Bank held the

properties in trust, with the remainder interest vesting with SuperAsh after 20 years. Beginning in 1998, Ashland subleased the properties to Speedway, which continues to operate gas stations and convenience stores on the properties.

In 2010, when the sale-leaseback deal reached its 20-year sunset, SuperAsh purchased its remainder interest in the properties. Around the same time, SuperAsh entered into the Ground Leases with U.S. Bank, N.A. (successor in interest to State Street Bank) and Ashland. The Ground Leases provided a five-year term, with an option to renew for an additional five-year term. Thereafter, the Ground Leases allowed Ashland to renew for additional, one-year terms by providing written notice to SuperAsh 120 days before the expiration of the lease term; thus, the notice was required by September 3, beginning in 2020, and each following year.

The two, successive five-year terms proceeded without litigation. In 2020, when the one-year term could have commenced pursuant to the Ground Leases, Ashland failed to send a timely, written notice of lease renewal by September 3. Instead, Ashland waited until November 23, 2020, to attempt to renew with the required, albeit late, notice. Nonetheless, the prior, five-year lease still had not yet expired in November, and Ashland and SuperAsh continued to operate as if a lease were still in effect, and SuperAsh accepted this particular overdue notice without objection.

The following year, in August of 2021, Ashland's counsel prepared and signed the notice of renewal. But once again and undisputedly, Ashland failed to send the written notice of lease renewal before September 3. This time, on November 3, 2021, SuperAsh advised Ashland that it had interpreted Ashland's failure as an intention to allow the Ground Leases to expire on December 31, 2021. Ashland's counsel then responded immediately by sending the admittedly overdue notice of renewal – which had already been signed with a date of August 11, 2021 – for a lease that had already expired by its own terms.

As SuperAsh had provided notice of lease expiration, and Ashland had given subsequent, non-compliant notice of renewal, the parties' written positions under the Ground Leases differed and left continued operations less than clear. In the months that followed, the parties entered into a series of "Tolling Agreements," which allowed Ashland to continue occupying the properties beyond December 31, 2021. All of the Tolling Agreements provided for continuation of the terms of the Ground Leases. The first three Tolling Agreements provided for one-month terms. The final Tolling Agreement, executed on March 29, 2022, terminated on April 15, 2022. In addition, all of the Tolling Agreements contained the agreed-upon limitations as to their effectiveness regarding the rights of the parties:

> [T]he purpose of this Agreement is to preserve the status
> quo as it was prior to its execution, and so nothing in this

Agreement is intended to or shall be deemed to resolve any issues related to the Dispute or revive any rights that might have expired or otherwise been lost as of its execution.

The parties were unable to resolve their differences prior to the expiration of the final Tolling Agreement. In April of 2022, Ashland filed an action in the Court of Common Pleas of Franklin County, Ohio ("the Ohio Litigation"). In the Ohio Litigation, Ashland sought a declaration from that Court that its untimely 2021 notice was effective to renew its Ground Leases as to all 24 properties through 2022, including the real property in Kentucky, and despite the language in the Tolling Agreements.

In July of 2022, SuperAsh filed countervailing, forcible detainer complaints in Kentucky District Courts in three counties with respect to the three properties at issue in this case. Before any of the Kentucky District Courts issued any rulings but while these matters were still pending here, the Ohio litigation proceeded to a bench trial. It does not appear that any party requested a stay of that trial to allow the Kentucky cases to proceed. On September 27, 2022, the Ohio Court issued an opinion granting Ashland's request for declaratory relief. In pertinent part, the Ohio Court concluded that Ashland was entitled to equitable relief to excuse its breach in submitting the late notice of renewal for a contract that had legally expired. The Ohio Court further opined that SuperAsh would

-7-

suffer no prejudice as a result of Ashland's "honest mistake."[1] Consequently, the Ohio Court ruled that "SuperAsh may not declare the 24 Ground Leases terminated[.]"[2] On October 3, 2022, the Ohio Court issued an Amended Judgment containing several additional findings but reaching the same result.[3]

These Ohio rulings resulted in cross-motions for summary judgment in all three pending forcible detainer complaints in Kentucky. In the Fayette District Court case (No. 22-C-01461), that Court adopted the Ohio Court's factual and legal findings and granted Ashland's motion for summary judgment. The Fayette District Court did not independently assess its own jurisdictional limitations, but instead based its decisions on the conclusions reached in another state with dissimilar laws. It then found without expounding upon its ruling that Ashland was entitled to assert equitable defenses to SuperAsh's forcible detainer complaints in Kentucky Courts that did not possess unlimited equitable powers. It then concluded that SuperAsh had waived detainer remedies by accepting rent after the Tolling Agreement concluded. Therefore, the Fayette District Court dismissed

---

[1] *Ashland Global Holdings, Inc. v. SuperAsh Remanderman Ltd. Partnership*, No. 22CV-2398 (Franklin Cty. Ohio Ct. Common Pleas) Opinion Sep. 27, 2022, pp. 11-12.

[2] *Id.* p. 18.

[3] The Ohio Court of Appeals, Tenth District, affirmed the Ohio Court's judgment in an opinion rendered on September 29, 2023. *Ashland Glob. Holdings, Inc. v. SuperAsh Remainderman Ltd. P'ship*, 2023-Ohio-3556, 225 N.E.3d 1177 (Ohio App. 10th Distr. 2023). The Supreme Court of Ohio has accepted the appeal for review. *Ashland Glob. Holdings, Inc. v. SuperAsh Remainderman, Ltd. P'ship*, 2024-Ohio-202, 172 Ohio St. 3d 1475, 225 N.E.3d 1049 (Ohio Jan. 24, 2024).

the complaint in forcible detainer. On December 11, 2022, the Harrison District Court followed suit and also granted summary judgment for Ashland and dismissed SuperAsh's complaint. (No. 22-C-00198.) And on January 6, 2023, the Jefferson District Court continued in the same vein and likewise granted summary judgment for Ashland and dismissed on the same grounds as stated in the Fayette action. (No. 22-C-008708.)

SuperAsh filed appeals from all three orders. The Fayette Circuit Court ruled first and affirmed in an opinion and order entered on February 24, 2023. (Appeal No. 22-XX-00042.) The Fayette Circuit Court concluded that the District Court had the authority to grant relief based on special circumstances warranting equitable relief. In an opinion and order entered on April 12, 2023, the Jefferson Circuit Court likewise affirmed. (Appeal No. 23-XX-000002.) However, the Jefferson Circuit Court additionally held that the ruling of the Fayette Circuit Court operated to preclude re-litigation of the same issue under the doctrine of *res judicata*. On April 14, 2023, the Harrison Circuit Court entered an opinion affirming its appeal, citing the same grounds found in the Fayette Circuit Court appeal. (Appeal No. 22-XX-00003.)

SuperAsh then filed timely motions for discretionary review in all three cases. The motion panel of this Court granted review and directed that the

matters be assigned to the same merits panel.  Additional facts will be set forth below as necessary.

## II.    PROCEDURAL ISSUES AND ABNORMALITIES

Before we turn to the substantive merits of the appeals, we must take note of two significant and irregular procedural issues that should have been, but were not, addressed in the first appeal from the Kentucky District Courts to the Kentucky Circuit Courts.  We first note that Kentucky Revised Statute ("KRS") 383.255(1) contains a financial prerequisite to filing an appeal:

> If either party conceive himself aggrieved by the judgment of the court, he may file an appeal within seven (7) days next after the finding aforesaid, and shall deposit with the circuit court clerk the amount of rent owing and due from the onset of the forcible entry and detainer proceedings as well as the amount of all future rents, as it becomes owing and due in each succeeding month during the pendency of the appeal.  The rental moneys collected in this account shall be distributed by court order at the conclusion of an appeal.

The parties agree that Ashland did not pay past or future rents to the Circuit Court Clerks as required by the statute.  Based on the language of the statute, Ashland, as the lessee, was required to make the rent payments into court, even though it is not the "aggrieved party" bringing the appeal.  This requirement is especially significant here because Ashland continues to occupy the properties, but SuperAsh refuses to accept any further rent payments as it considers the occupation unlawful.

-10-

However, SuperAsh concedes that it did not demand from Ashland payment of rents into court as it had the right to do, and thus that its failure to do so has now operated to waive that requirement. This bond requirement is not jurisdictional, as it may be waived, at least in cases of indigency. *See Meinshausen v. Friendship House of Louisville, Inc.*, 607 S.W.3d 199, 202 (Ky. App. 2020) (citing *Fickey v. Cross Creek Apartments, Ltd.*, 700 S.W.2d 807, 808 (Ky. App. 1985)). While we do not approve of the failure to address and follow this statute, we do not conclude that it deprives this Court of jurisdiction to address the merits of the appeal.

Second, we are compelled to note the somewhat unusual aspect of litigating these cases before the respective District Courts on motions for summary judgment. Forcible detainer actions are designed to be summary proceedings. In general, the only issues are possession by the plaintiff and detainer by the defendant. *Shinkle v. Turner*, 496 S.W.3d 418, 421 (Ky. 2016) (citing *Baker v. Ryan*, 967 S.W.2d 591, 593 (Ky. App. 1997)). Because forcible detainer is a special statutory proceeding, the statutory requirements displace any contrary terms of the Rules of Civil Procedure. *McCann v. Sullivan Univ. Sys., Inc.*, 528 S.W.3d 331, 333-34 (Ky. 2017). KRS 383.220-383.235 set out the summary evidentiary process for resolving forcible detainer complaints. As a summary

-11-

proceeding, forcible detainer proceedings will not usually be resolved by dispositive motions for judgment.

That said, there may be circumstances in which there are no genuine issues of material fact, and the matter can be resolved as a matter of law. *See, e.g.*, *Fraysur v. McAlpin*, No. 2013-CA-000963-DG, 2014 WL 4524697, at *2 (Ky. App. Sep. 12, 2014) (unpublished).[4] Here, the parties submitted the cases to the District Court on the agreed facts as found in the Ohio Court judgment. However, the District Courts were still required to set forth the stipulated and agreed findings of fact pertinent to their respective conclusions of law. And those conclusions of law must ensue irrespective of the parties' factual agreements. Had this litigation commenced in Kentucky in the Circuit Court instead of the District Court, this motion practice would likely have occurred because it is common at that level.

At a minimum, summary judgment was a poor procedural fit for these cases, as was perhaps the District Court itself. Nevertheless, the parties do not challenge the sufficiency of the Ohio Court's factual findings, only the conclusions of law. Therefore, while we do not necessarily endorse the District Courts' reliance on summary judgment in this case, this issue does not affect our jurisdiction to address the merits of the appeals. It does, however, add to the complexities of the case.

---

[4] This unpublished case is only cited pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41(A).

It simply cannot be ignored that this litigation comes to us from a highly unusual scenario that has complicated the basic issues that must be decided as matters of law. It has already proceeded in at least two different states, including three separate Kentucky District Courts and three separate Kentucky Circuit Courts. These cases comprise significant disputes involving state and local jurisdiction, vast sums of money, numerous real properties, several states, complex and successive legal documents, teams of attorneys, and novel arguments and rulings. And yet, judicial precedent on long-standing case law exists, and some of it has been ignored by the parties and the lower courts.

Ashland and Speedway commenced the litigation in Ohio. SuperAsh later brought suit in Kentucky District Courts about the same matters. The Ohio litigation came to judgment first, although it is not final. In the subsequent Kentucky District Court cases, Ashland and Speedway sought to rely on the earlier judgment of the Ohio Court, which had specifically relied on equitable grounds as a basis for relief. Under Kentucky law, District Courts are generally devoid of equitable jurisdiction. Although SuperAsh objected to the equitable relief, it consented to submitting the matters to the Kentucky District Courts on the factual findings that had been made by the Ohio Court. As a result, the Kentucky Courts have been presented with cases claiming another state's findings, factual or otherwise, were entitled to more deference than they should have been about real

property located in Kentucky.  Likewise, the parties' practice of this case resulted in asking the Kentucky District Courts to adjudicate matters that are not generally within the scope of forcible detainer proceedings, and those Courts complied without sufficient questioning and beyond their bounds.  The Kentucky Circuit Courts then accepted this atypical package of cases and practices on appeal without further assessing the jurisdictional limitations squarely at issue here.  This series of convoluted events has now landed here.  We are bound to sort it out as best as possible and to offer some clear resolution as follows.

### III.   RES JUDICATA

We begin our analysis with the doctrine of *res judicata*, which has been raised on two fronts, and yet it applies to neither.  As explained succinctly in *Yeoman v. Commonwealth, Health Policy Board*, 983 S.W.2d 459, 464-65 (Ky. 1998):

> [t]he doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*Id.* at 464 (quoting 46 AM. JUR. 2D *Judgments* § 514).  *See also Buis v. Elliott*, 142 S.W.3d 137, 139-40 (Ky. 2004).

The parties agreed to submit the matters to the Kentucky District Courts on the factual findings made by the Ohio Court, although there was no requirement that they do so. The parties and the lower courts have suggested incorrectly that those findings had conclusive, *res judicata* effect, precluding further review. However, the process described is not an application of the doctrine of *res judicata*, but simply a stipulation of agreed facts.

Ashland and Speedway also contend mistakenly that *res judicata* applies to the legal conclusions in Ohio because the same issues were fully litigated in both Ohio and the Kentucky Fayette County Courts. First, as a matter of law, the Ohio Court judgment is not entitled to preclusive effect because that court has no jurisdiction over properties located in the Commonwealth of Kentucky, particularly in the absence of explicit choice of law, conflicts laws, or venue provisions in the controlling legal provisions of the Ground Leases and Tolling Agreements. Second, as Section 24.16 of the Ground Leases specifies, it is "governed by and construed pursuant to the internal laws (and not the conflicts laws) of the state in which the Ground Leased property is located," *i.e.*, Kentucky law. (Capitalization removed.)

Third, the Ohio Court expressly noted that it "has not attempted to rule on the law applicable to these same facts in the four other states where

convenience stores are operating."[5]  Fourth, the Ohio Court addressed distinct factual and legal issues in that state.  Fifth, we could find no "honest mistake" defense in Kentucky law to a forcible detainer action, and the parties did not direct us to any case so finding.  Thus, Kentucky Courts cannot accept as *res judicata* a legal doctrine that we do not even have.  And sixth, since the Ohio Court judgment is still pending on appeal, it is not a final judgment on the merits.  Therefore, the Ohio Court's judgment is not *res judicata* as a matter of law in any of the cases *sub judice*.

Finally, the Jefferson Circuit Court's ruling that the judgment of its sister Fayette Circuit Court was *res judicata* as to the same issues before it is an erroneous application of the doctrine.  Whether the District Courts were courts of competent jurisdiction in equity was an issue squarely before three different Kentucky Circuit Courts on appeal from three different District Courts.  These Circuit Courts owe no deference to one another on questions of law concerning determinations of equitable jurisdiction of the District Courts.  These Courts of equal footing may cite each other's opinions as persuasive authority for their own decisions, but the holdings of one Circuit Court on pure matters of law do not operate as binding precedent on another.  This persuasive authority cannot serve to preclude other Circuit Courts from deciding differently and cannot control

---

[5]  *Ashland Global Holdings, Inc. v. SuperAsh Remanderman Ltd, Partnership*, *supra* p. 2.

automatically the outcomes in other cases before courts of competent, individual jurisdiction. Therefore, *res judicata* cannot apply on the issues *sub judice* to preclude Kentucky Circuit Courts from rendering particular decisions within their own jurisdiction. Even if all three Kentucky Circuit Courts accepted what were in effect stipulations of fact, they could, and should, have made their own conclusions of law as to whether the respective District Courts had jurisdiction to award equitable relief and whether those District Courts correctly decided pure issues of law on matters of which they did have jurisdiction. To be clear, Circuit Courts are permitted to adopt the reasoning of other Circuit Courts, but they are not required to do so.

## IV. JURISDICTION AND POWERS OF DISTRICT COURT AS TO EQUITABLE REMEDIES IN FORCIBLE DETAINER PROCEEDINGS

Having dispensed with the preliminary issue of the lack of *res judicata* effect and upheld the corresponding requirement that the Kentucky Courts independently decide matters of jurisdiction and available remedies, we turn to the primary, substantive question. The main issue on appeal now is the proper exercise of jurisdiction by the Kentucky District Courts in forcible detainer actions and the remedies available to them.

**A. DISTRICT COURTS ARE PRIMARILY COURTS OF LIMITED JURISDICTION OVER LEGAL ISSUES AND DO NOT HAVE GENERAL JURISDICTION OR EQUITABLE POWERS IN GENERAL**

Sections 109 and 113 of the Kentucky Constitution establish the District Court as a trial court of limited jurisdiction as may be prescribed by the General Assembly. In KRS 24A.120(1), the Legislature assigned the District Court exclusive jurisdiction in civil cases in which the amount in controversy does not exceed $5,000.00, "except matters affecting title to real estate and matters of equity[.]"

Thus, by its terms, the statute does not allow District Court to entertain matters of equity. Kentucky Courts have long construed the statute to mean further that forcible detainer is a special proceeding that a District Court may hear, but only with further limitations on its jurisdiction. *Shinkle*, *supra* at 423. "A forcible detainer action focuses upon and determines which party is entitled to *present* possession of the property at the commencement of the action, not at some later date." *Id.* at 422 (emphasis in original) (citing *Bledsoe v. Leonhart*, 305 Ky. 707, 205 S.W.2d 483, 484 (1947)). As such, a District Court only has the authority to order restitution of the premises and payment of costs expended by the prevailing party. KRS 383.240. It has no other legislative mandate or jurisdictional authority over matters in forcible detainer.

-18-

The exact statutory language quoted above specifically excepts jurisdiction from District Courts in determining matters of equity. In other words, the District Court is not allowed to fashion other remedies in equity to render parties whole or to address other claims such as fraud, estoppel, or acquiescence.

Ashland admits, as it must, that the District Courts do not have the authority to grant equitable relief. However, contrary to the unambiguous statutory directive, Ashland argues that District Courts retain the authority to consider all equitable defenses that were available at common law. The District Courts agreed, holding that equitable defenses are available in forcible detainer proceedings, citing several older cases. *Woodrum v. Pulliam*, 453 S.W.2d 263, 265 (Ky. 1970) and *Rounds v. Owensboro Ferry Co.*, 253 Ky. 301, 69 S.W.2d 350, 355 (1934). *See also Paducah Home Oil Co. v. Paxton*, 222 Ky. 778, 2 S.W.2d 650, 651 (1928) (citing *Edwards-Pickering Co. v. Rodes*, 203 Ky. 96, 261 S.W. 884 (1924)). *But see Jones v. Commonwealth*, 104 S.W. 782, 784 (Ky. 1907), holding that "[a] defense available only in equity cannot be pleaded to an action of forcible entry and detainer." All of these cases pre-date the adoption of our current Judicial Article in 1976 and thus are of questionable relevance and authority.

Ashland contends that the adoption of the current Judicial Article did not deprive the District Court of jurisdiction to consider equitable defenses available at common law. We disagree. KY. CONST. § 113(6) states that the

-19-

"district court shall be a court of limited jurisdiction and shall exercise original jurisdiction as may be provided by the General Assembly." Likewise, a forcible detainer complaint is a special proceeding requiring strict compliance with the statutory requirements, which further limit the District Courts' jurisdiction. *Shinkle*, *supra* at 423. Thus, District Courts cannot generally consider equitable defenses.

As a general rule of statutory construction, the enumeration of a particular thing demonstrates that the omission of another thing is an intentional exclusion. This basic tenet of statutory construction is usually referred to by the Latin phrase *expressio unius est exclusio alterius*. *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010). Although this maxim is not always applicable, we conclude that it is here because the district courts may only exercise jurisdiction as explicitly granted by the General Assembly. Except for the limited grant under KRS 383.675, the General Assembly did not incorporate other equitable defenses into the forcible detainer statutes under KRS Chapter 383. Thus, the Legislature by intentional omission did not allow any or all other equitable defenses.

Here, the Ohio Court fashioned an equitable theory that an "honest mistake" is a meritorious defense to a party's failure to renew a lease on time. It opined that such an unintentional error occurred here, and that Ashland's admitted failure to renew its lease pursuant to its own terms was excused. It then concluded

that the contract was still in effect, and SuperAsh was required to continue to lease the properties to Ashland.

That Court may have such equitable powers there, but Kentucky District Courts do not have them here and cannot rewrite parties' contracts according to general, and inherently subjective, beliefs about fairness and justice. Kentucky District Courts are confined to ruling upon existing Kentucky laws and statutes. Accordingly, Kentucky District Courts do not have the authority to award relief under Ohio's equitable theory of an honest mistake because such a supposition is without foundation in the specific jurisdictional limitations of District Courts, and no Kentucky Court has adopted this theory. These decisions to award equitable relief amount to abuses of discretion. Therefore, Kentucky Circuit Courts' opinions affirming on these grounds represent clear error. We are thus compelled to reverse and remand these affirmations with instructions to reverse and remand the District Courts' grants of dismissal of the forcible detainer complaints on this ground.

**B.     DISTRICT COURTS DO NOT GENERALLY HAVE THE EQUITABLE POWER TO RENEW A LEASE THAT HAS EXPIRED BY ITS OWN TERMS**

As a Court of law with limited jurisdiction, District Courts do not generally possess an equitable power to forge a legal renewal where a lease has already expired pursuant to its own, agreed, and lawful terms. In the Ohio

-21-

litigation, that Court found that according to its stated equity, it would not permit SuperAsh to declare the leases terminated pursuant to their own legal terms. It also found that SuperAsh would not suffer any prejudice from being forced to continue a lease that it wanted to end. Our District Courts are simply not allowed to make such rulings, and even if they were, they could not do so without making any findings of lack of prejudice.

While the lower courts here relied – improperly – upon older cases that pre-date the adoption of the 1976 Judicial Article to support their attempted adoption of equitable principles, even those cases do not support the rulings made in the cases *sub judice*. *Woodrum* and *Round*s offer no solace to the lower courts because both cases expressly note that neither law nor equity will provide a remedy when notice to renew a lease is not timely given. *Woodrum*, 453 S.W.2d at 265; *Rounds*, 69 S.W.2d at 355. Thus, both statutory and case law provide no general support for a District Court to provide any relief when a party does not lawfully renew its lease:

> Where a lessee has a right of renewal provided he gives notice at or before a specified time to the lessor, of his intention to exercise the privilege of renewal, it is ordinarily held that the giving of the notice is a condition precedent which must be complied with within the stipulated time, and that, *in the absence of special circumstances warranting a court of equity in granting relief*, the right to a renewal is lost if the notice is not given in accordance with the provisions of the lease.

-22-

*Rounds*, 69 S.W.2d at 356 (emphasis added).

The emphasized language in *Rounds* makes it abundantly clear that such special circumstances are matters for a court of equity, which the District Court plainly and simply is not. Furthermore, all statutory and binding case law holds that a court of law like District Court cannot create mechanisms outside of and directly contrary to specific contract provisions in order to avoid its terms, particularly those regarding breach upon failure to renew timely. "Ordinarily a provision in a lease requiring written notice to the lessor of the lessee's election to exercise his option to renew the lease must be strictly complied with, and the notice must be given at the time and in the manner specified[.]" *Deane v. Mitchell*, 312 Ky. 389, 392, 227 S.W.2d 893, 894 (1950) (citing *Rounds*, *supra*).

Ashland also contends that the general limitation on the District Court's equitable jurisdiction in KRS 24A.120(1) does not apply to specific grants of jurisdiction in forcible detainer under KRS 383.200 *et seq.* While we agree with the premise that the General Assembly may grant jurisdiction to District Court to consider specific equitable matters, we note that such a grant is narrowly construed, and Courts will not infer or extend jurisdiction beyond its explicit terms. *See Peter v. Gibson*, 336 S.W.3d 2, 6 (Ky. 2010)[6] (in a limited District Court

---

[6] SuperAsh's counsel cited *Peter v. Gibson*, *supra*, for the first time on rebuttal during oral argument. We note that RAP 35(B) and 38(E) set forth specific requirements for granting leave to cite to supplemental authority that was not cited in a party's brief. Nevertheless, this Court

proceeding under the Uniform Transfer to Minors Act, which must be strictly construed, even though accounting is generally an equitable remedy, District Court is permitted to order an accounting of an existing custodianship but not an expired custodianship). And Ashland's argument that the statute only prohibits injunctions seeking equitable relief and not the seeking of other equitable remedies and defenses is belied by the statutory language itself and unsupported by any case law.

Although a lessor may waive the notice requirement for renewal, *id.*, there is no allegation in this case that SuperAsh actually waived timely notice of Ashland's intent to renew. Indeed, the undisputed facts in all three cases demonstrate the exact opposite: that SuperAsh provided notice to Ashland that it considered Ashland's lack of timely notice to renew to constitute an intention to let the lease expire. Lower courts – District or Circuit – cannot fashion out of whole cloth a contradictory, implied waiver.[7] Nor can the District Courts forge the other equitable defenses of estoppel, acquiescence, or fraud here because they received no such evidence. An alleged "honest mistake" by Ashland causing it to fail to renew and forfeit its lease is not a legal ground to allow it to overcome the express,

---

granted leave to Ashland to file a response to this citation following oral argument. This Court may consider uncited authority to the extent that it is controlling and relevant to a complete determination of the legal issues presented. In doing so, however, we do not excuse SuperAsh's failure to comply with the applicable Rules, and we caution all parties to comply fully with the Rules in the future.

[7] This notice-to-renew waiver issue is separate and distinct from an alleged waiver by accepting rent, *infra*.

legal terms of the contract. And the District Court's acceptance of this theory in equity created by the Ohio Court is unsupported in Kentucky's case law, and regardless, is out of the bounds of the limited jurisdictional considerations permitted to Kentucky District Courts.

Recently, in *Kiwanis Club of Lagrange, Inc. v. Friends of Oldham County Fair, Inc.*, No. 2016-CA-000489-DG, 2017 WL 4862406 (Ky. App. Oct. 27, 2017) (unpublished),[8] this Court re-emphasized the authority of the District Courts to address matters involving possession and present occupancy, and the simultaneous lack of jurisdiction for those courts to address other equitable matters. In *Kiwanis*, we addressed whether a District Court properly exercised jurisdiction over a forcible detainer action that implicated an equitable interest in improvements to the leased property. Importantly, in that case, a separate action was brought in Circuit Court to determine which party had proper title to the building and/or to the land, to decide matters relating to the compensation for the equity in the building, and to reform the lease. *Id.* at *1. This Court reiterated the statutory and case law holding that the District Court retained jurisdiction over the propriety of the lessee's continued occupancy and possession of the premises, while the Circuit Court had jurisdiction to interpret the terms of the lease to determine the equitable issues and ownership of the building. *Id.* at *2-3. While

---

[8] We mention this case here pursuant to RAP 41(A), solely as persuasive authority.

*Kiwanis* is unpublished (and perhaps points to a need for publication of this opinion), its discussion is relevant to address the availability of equitable remedies in forcible detainer proceedings.[9]  The Circuit Court is a court of general jurisdiction, while the District Court is a court of limited jurisdiction that may be exercised only under statutory limits and prescriptions.  *Hisle v. Lexington-Fayette Urb. Cnty. Gov't*, 258 S.W.3d 422, 433 n.7 (Ky. App. 2008) (citing KY. CONST. § 109).

To reiterate, equitable defenses are not generally available in forcible detainer proceedings to contravene established contracts, except where specifically authorized by statute.  Consequently, the District Courts in these cases did not have jurisdiction to dismiss the forcible detainer complaints based on equitable grounds when lack of legal notice to renew was unquestionably not provided.  Thus, the Circuit Courts should not have affirmed these dismissals.  There is no dispute in this case that Ashland failed to provide SuperAsh with timely notice of its decision

_____

[9]  Ashland also cites to *Lumax Realty Corporation v. Kroger Company*, No. 2009-CA-002393-MR, 2011 WL 4632999 (Ky. App. Oct. 7, 2011) (unpublished), as allowing an equitable remedy for failure to provide timely notice of a lease renewal.  However, *Lumax Realty* also involved an appeal from a declaratory judgment action brought in Circuit Court, which clearly has equitable powers.  *See also Lykins Enterprises, Inc. v. Felix*, No. 2006-SC-000142-DG, 2007 WL 4139637 (Ky. Nov. 21, 2007) (unpublished), affirming a Circuit Court's order concluding that a lessee was entitled to exercise a purchase option despite an untimely exercise of that option.  Again, the jurisdiction of the District Court was not at issue.  Likewise, *Nation v. Paddock*, No. 2023-CA-0211-MR, 2024 WL 874593 (Ky. App. Mar. 1, 2024) (unpublished), arose from a Circuit Court judgment rejecting equitable defenses to statute of limitations.  And, *Mayo v. Century 21 Action Realtors, Inc.*, 823 S.W.2d 466 (Ky. 1992), cited at oral argument, was a Circuit Court matter about a commission from a real estate sale executed during a contract extension period for a showing made during an exclusive listing.  None of these cases address the District Courts' lack of equitable powers in forcible detainer proceedings.

to renew the Ground Leases. There is also no dispute that SuperAsh rejected Ashland's untimely notice of renewal prior to the expiration of the lease period. As a result, there was no basis for the District Courts in law (and certainly not in equity) to find a waiver of this requirement. Since there was no timely renewal, the Ground Leases naturally and legally expired by their own terms.

We note in passing that, having reached this conclusion, we need not address whether Ashland would be entitled to equitable relief in a declaratory-judgment action brought in Circuit Court because Ashland did not proceed in that manner in Kentucky, but only in Ohio. And SuperAsh initiated the actions here in the District Courts and not the Circuit Courts, where it could have sought a declaratory judgment. We will also not comment upon whether the equities would favor Ashland's assertion of the terms of a 1990 lease upon parties in 2022.

### C. DISTRICT COURTS HAVE THE POWER TO DETERMINE WHETHER ACCEPTANCE OF LATE PAYMENT OF RENT OPERATES AS A DEFENSE TO FORCIBLE DETAINER

Our holding here is that Kentucky District Courts do not generally have equitable powers, and thus they are devoid of jurisdiction to create an equitable defense of honest mistake and offer equitable remedies where a lease has legally expired pursuant to its own terms. However, these two rulings alone do not clear these muddied waters.

Pertinent to this case, the General Assembly explicitly recognized that acceptance of performance constitutes a waiver of the landlord's right to terminate. KRS 383.675.[10] In so doing, the General Assembly specifically allowed the District Courts to consider whether the acceptance of late rent is a defense to forcible detainer. KRS 383.675 was enacted in 1984, eight years after the adoption of the current procedures relating to forcible detainer proceedings in district court. However, Courts in this Commonwealth have been ruling for over 100 years that acceptance of late payment of rent waives default.

Here, the lower courts ruled that SuperAsh waived its defenses by accepting rent payments. They were within their authority to do so. However, their rulings were intertwined with their erroneous rulings that Ashland's "honest mistake" gave them equitable powers, and that SuperAsh was required to continue to renew the leases and suffered no prejudice. Those Courts also appeared to adopt the Ohio Court's ruling on this issue without further analysis. Moreover, there is no dispute that SuperAsh only accepted late rents for a short period of time.

The Fayette District Court concluded that SuperAsh's acceptance of rent after April 15, 2022, constituted a waiver of its right to terminate the lease. As

---

[10] KRS 383.675 is part of the Uniform *Residential* Landlord and Tenant Act. For over a century, Kentucky Courts have applied this type of waiver to non-residential, commercial leases, such as this one. The Kentucky Supreme Court has not weighed in on the propriety of this now well-established practice that was not part of the act itself. We will not take it upon ourselves to do so now, as no party has raised it here, and it is not determinative of this particular holding. We pause here to note that we are aware of this discrepancy, and that it appears that this act has been adopted by Fayette and Jefferson Counties, but not by Harrison County.

noted above, this conduct may properly constitute a defense to the forcible detainer under KRS 383.675. However, the Fayette District Court adopted the conclusions of the Ohio Court, which found waiver based on other equitable principles. As discussed above, the legal and equitable conclusions of the Ohio Court are not *res judicata* in these cases. On remand, the District Courts must determine whether any waiver occurred based only upon the language in the Kentucky statute.

In making those determinations, the District Courts will need to address, under Kentucky statutes and case law, whether the statutory defense of waiver applies where the parties otherwise agree after a breach. KRS 383.675; *see also Pangallo v. Kentucky L. Enf't Council*, 106 S.W.3d 474, 479 (Ky. App. 2003) (quoting *Greathouse v. Shreve*, 891 S.W.2d 387, 391 (Ky. 1995)). The Anti-Waiver provisions in the Ground Leases may have a bearing on these issues. Similarly, the Tolling Agreements have an impact on these issues, and the District Courts here must first rule upon whether these later contracts operated to waive rights under the Ground Leases before these issues may be addressed on appeal here. The District Courts and Circuit Courts did not sufficiently address the parties' contracts. Thus, we must reverse and remand the Circuit Courts' rulings of affirmance on this issue, with instructions to reverse and remand to the District Courts for further hearing. The District Courts must determine whether waiver can occur in light of the language of the Ground Leases and the Tolling Agreements.

They did not make any of these necessary findings originally, and the Circuit Courts on appeal did not address them. The parties' briefs and oral arguments did not reach this point in detail, and we cannot analyze them for the first time on appeal.

Moreover, and as part of this analysis, the District Courts must designate the timing and amount of the late payments that SuperAsh accepted and the impact of those payments upon the whole dispute. Given that the parties did not waive the lack of required notice to renew the leases, as stated *infra*, accepting some late rent for some months does not necessarily equate with the renewal of a lease term. Rather, it may result in a month-to-month lease. The first three Tolling Agreements had one-month terms. The parties will likely hotly dispute the effect of late payments upon the time limits of an extension of the lease. This fight must occur at the trial level and not here, and the District Courts need to make findings on these issues.

Finally, we acknowledge that these types of findings are not generally the province of the Kentucky District Courts. But the facts that present themselves to us are that these suits were brought there, and not in the Circuit Courts. The Legislature and the Courts have allowed this mechanism to be used by District Courts to determine whether waiver by the acceptance of late rent exists in all forcible detainer actions. This case may become the undoing of that principle.

## V.    CONCLUSION

We must emphasize by reiteration that issues of jurisdiction are always paramount matters that all Courts must address at the outset. Kentucky District Courts are fundamentally Courts of limited jurisdiction. And even where they have some jurisdiction, Kentucky District Courts have not been granted all powers of relief, equitable and otherwise, that the Legislature specifically reserved to Kentucky Circuit Courts, which are Courts of general jurisdiction. Except where the Kentucky General Assembly has specifically granted such authority, the District Courts lack jurisdiction to grant equitable relief or consider equitable defenses.

We conclude that the General Assembly has not given such specific authority to consider the equitable defenses of honest mistake and lack of prejudice raised by Ashland and Speedway. Therefore, the District Courts cannot hold that SuperAsh has no power to terminate its leases pursuant to their express terms. Accordingly, the District Courts erred by dismissing the forcible detainer complaints on that basis, and the Circuit Courts erred by affirming them. However, the District Courts are empowered to determine whether SuperAsh waived forcible detainer by accepting late rents. They must take the Ground Leases and Tolling Agreements into consideration when making these determinations and must make findings as to any periods of extension of the leases.

-31-

Accordingly, we must reverse the orders of the Fayette, Jefferson, and Harrison Circuit Courts in the above-styled actions and remand with directions to enter orders reversing and vacating the District Courts' dismissal of the forcible detainer complaints and remanding the cases back to the Fayette, Jefferson, and Harrison District Courts respectively to reinstate for additional proceedings and factual findings as set forth in this Opinion. Specifically, the District Courts are not bound pursuant to *res judicata* to adopt the findings and conclusions of another state court; but they can accept a stipulation of facts from the parties. Further, the District Courts cannot act outside their jurisdiction to rule on matters of equity. The District Courts cannot find that expired leases can nonetheless be construed as having been renewed by implication by a party's honest mistake or by the terminating party's lack of prejudice. However, the District Courts will need to make individual findings and conclusions of law on the equitable defense of the acceptance of some late rents. And they must determine whether SuperAsh waived default in the face of the parties' express Ground Leases and Tolling Agreements, and if so, for how long.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Clark C. Johnson
Michael T. Leigh
Burt A. "Chuck" Stinson
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Clark C. Johnson
Louisville, Kentucky

BRIEF FOR APPELLEE ASHLAND,
LLC:

Justin S. Fowles
Jason P. Renzelmann
Nathaniel T. Fowler
Louisville, Kentucky

BRIEF FOR APPELLEE
SPEEDWAY, LLC:

Jeremy S. Young
Columbus, Ohio

Tyler M. Jolley
Robert W. Schrimpf
Cincinnati, Ohio

ORAL ARGUMENT FOR
APPELLEES:

Jason P. Renzelmann
Robert W. Schrimpf
Cincinnati, Ohio